## STATE v. SERENSON.

1. Under the rule that admits the best attainable evidence of which a case in its nature is susceptible, the public record of a duly-acknowledged written instrument is admissible in evidence, when material, upon

proof that the original is beyond the jurisdiction of the court and is neither owned nor controlled by the party in whose favor the record of such instrument is offered.   Comp. Laws, sec. 5308.

2. When the question of agency is but incidentally involved, and it is shown, by competent evidence, that the accused has recognized such agency by a course of dealing, it is not reversible error to overrule an objection to the following preliminary, though perhaps indefinite, question, propounded by the state to a witness shown to have represented the party named, in relation to the business out of which the alleged embezzlement arose: "Did you act as agent for Albert E. Egge in any transaction?"

3. Under the facts and circumstances of this case, the defendant has no reason to complain of the following instruction, which is in the precise language of section 6805 of the Compiled Laws: "The fact that the accused intended to restore the property embezzled, is no ground for defense, or of mitigation of punishment, if it has not been restored before an information has been laid before a magistrate, charging the commission of the offense."

4. For the purpose of elucidating, and with a desire to render more intelligible, the phrase, "reasonable doubt," the court instructed the jury as follows:  "You are further instructed that the reasonable doubt which entitles an accused to an acquittal is a doubt of guilt reasonably arising from all the evidence in the case.   The proof is deemed to be beyond reasonable doubt when the evidence is sufficient to impress the judgment of ordinarily prudent men with a conviction, on which they would act without hesitation, in their own most important concerns or affairs of life.   In other words, in a legal sense, a reasonable doubt is a doubt which has some reason for its basis.   It does not mean a doubt from mere caprice or groundless conjecture.   A reasonable doubt is such a doubt as the jury are able to give a reason for."   *Held*, not reversible error.

5. Other instructions of the court to which assignments of error relate examined, and considered to be entirely proper, under the indictment and evidence before the jury.

(Syllabus by the Court.   Opinion filed August 3, 1895.)

Error to circuit court, Day county.   Hon. A. W. CAMPBELL, Judge.

Henry Serenson was convicted of embezzlement and brings error.   Affirmed.

The facts are stated in the opinion.

*E. W. Taylor, Julian Bennett* and *Martin E. Sheldon* for plaintiff in error.

*Coe I. Crawford,* attorney general, and *John Lund,* states attorney, for defendant in error.

FULLER, J.   The trial of plaintiff in error upon a valid indictment, in which he was accused with the embezzlement of $755.30, resulted in a verdict of guilty as charged, and a judgment was accordingly entered.   From the evidence introduced in support of the allegations of the indictment, it appears that the defendant, in his official capacity as sheriff, received as money, on the 17th day of July, 1894, from certain mortgagors named in the indictment, a draft for $700, drawn by a Chicago bank in favor of itself, together with $55.30 in currency, all of which was thus paid for the purpose of redeeming certain real estate from a mortgage foreclosure sale, at which the property was struck off and sold to one Albert E. Egge; and this draft was by the defendant deposited in a bank to his individual credit, and by him checked out, in due course of business, and no part of said money was paid to said Albert E. Egge, the purchaser of the mortgaged premises, and the owner of the certificate of sale at the time of such redemption. As the evidence, if competent, is clearly sufficient to sustain the verdict and conviction, we will briefly address ourselves to an examination of such of the assignments of error relating to the admission and exclusion of evidence, and the charge of the court, as may be regarded sufficiently important to merit attention.

For the purpose of laying a foundation for the introduction of an authenticated record of the certificate of redemption, executed by the defendant at the time he received from the mortgagors and owners of the equity of redemption the amount required to redeem from the sale, and which the jury found he subsequently embezzled, the register of deeds was sworn, and, after the usual preliminary questions, the book and page containing a record of said certificate of redemption, signed and acknowledged by the defendant in the presence of witnesses, was offered in evidence.

Witness further testified that: "After recording the certificate of redemption, he thought he delivered it to Thomas McKennett by mail, by whom it was delivered to him to be placed on record. Remembers of his own knowledge that he took the acknowledgment of the original certificate and Serenson's signature to the same. These records have been in my custody all the time, as an officer, since being recorded." The attorney for the state testified concerning the original certificate of redemption recorded in the office of the register of deeds, in the book and at the page offered for identification, as follows: "I don't know just exactly where it is, of my own knowledge. Presume that John McKennet has it. He is in Minnesota; and I sent for him, three or four days ago, requesting him to bring the original certificate with him. He has not sent it, and is not here, although I expected him this morning. He resides at Hopkins, Minnesota. I wrote, either Friday or Saturday night, notifying him to be present this morning with the certificate. McKennett's full name is John McKennett, and the certificate was issued and delivered to him." On cross-examination, witness stated that he did not know where the certificate was, unless McKennett had it. Over the objection that the proper foundation had not been laid for the introduction of secondary evidence, and that sufficient diligence was not used to obtain the original certificate, the record was received in evidence, and its admission is urged as error. It was clearly shown that the original instrument was not the property of the state, nor within its control; and the record thereof was admissible under section 5308 of the Compiled Laws, as well as under the rule that admits the best attainable evidence of which a case in its nature is susceptible. The witness T. E. Egge, brother of Albert E. Egge, named in the indictment as the person for whom the defendant received in trust the redemption money alleged to have been the subject of defendant's embezzlement, and who testified on the part of the state that he had charge of the McKennett land and loan matter, and the redemption thereof from the mortgage foreclosure sale, was asked the following question: "Did you act as agent for

Albert E. Egge in any transaction?"   As this question, though in-
definite, was merely preliminary, and not subject to the objection
interposed, we pass the assignment of error relating thereto with-
out further notice.

From a careful examination of the entire record, we discover
no prejudicial error on the part of the court with reference to the
introduction or exclusion of evidence, nor in its ruling upon a mo-
tion to advise the jury to return a verdict of not guilty. · We will
therefore proceed to a consideration of the assignments of error re-
lating to the court's charge to the jury.   It appears from the evi-
dence that an amount equal to the redemption money received by
the defendant in his official capacity on the 17th day of July, 1894,
was paid to Mr. Egge, the owner thereof, on the 18th day of the
following October, through an arrangement with the bank where
defendant had done business, entered into by himself and his
bondsmen; and the following instruction is assigned as error:   "I
say to you further, that the statute of this state provides that:
'The fact that the accused intended to restore the property em-
bezzled is no ground of defense, or of mitigation of punishment, if
it has not been restored before an information has been laid before
a magistrate, charging the commission of the offense.' "   While
there seems to be no evidence that an information was ever laid be-
fore an examining magistrate, this instruction, which is in the pre-
cise language of section 6805 of the Compiled Laws, was not pre-
judicial to the defendant.   In effect, the court further instructed
the jury that, if they found from the evidence beyond a reasonable
doubt, that the defendant received from the McKennetts a bank
draft belonging to Mr. Egge, in part payment of the amount nec-
essary to redeem from the mortgage foreclosure sale, and converted
the same into money, and fraudulently appropriated the same, to-
gether with the currency received to his own·use, the crime would
be complete, so far as the character of the money was concerned.
Under the indictment, which was unassailed by demurrer, and the
evidence properly before the jury, this instruction, considered
with other portions of the charge, clearly states the law of the

case concerning the point under consideration. The acceptance by the defendant of the draft and currency in his official capacity was in the line of duty, and the mere fact that the same was deposited to his credit would not constitute the crime of embezzlement; but the jury was justified in finding from the evidence that the defendant was credited at the bank with the entire amount of money, including the draft, all of which belonged to Mr. Egge, and which was soon afterwards by the defendant checked out, not in the due and lawful exercise of his trust, but for the purpose of fraudulently appropriating the money, aggregating $755.30, to his own use and benefit. It was practically conceded on the trial that the defendant, in his official capacity as sheriff, received the money from McKennetts for Albert E. Egge, as charged in the indictment, for the purpose therein alleged, on the 17th day of July, 1894; and it appears from the evidence that T. E. Egge, as agent for his brother, personally demanded said redemption money on the 23d day of the same month, and was by the defendant imformed that the redemption was not fully completed, and that he had not yet delivered the certificate. Later, and on the 23d day of August, Mr. Egge, after some correspondence with defendant in regard to the matter, made a trip from Minneapolis to Webster and Bristol, and again made a number of fruitless demands upon the defendant for the money. On cross examination, the witness testified as follows: "Once, when calling for the money the defendant asked for time, and I waited. He said it was a bad pill for him if anything was said about it, and he wanted me to wait a little while, and he would raise the money." It also appears that the payment was finally made to Mr. Egge by Mr. Williams, a banker, at the request of defendant's bondsman, who obligated themselves to reimburse the bank, and took an assignment of certain accounts and a second mortgage on his residence in the town of Webster. Further demands and corroborating testimony need not be detailed. Every element of the crime was fully established by the evidence.

An exception was taken to the following instruction, and the giving thereof, is assigned as error. "You are further instructed

that the reasonable doubt which entitles an accused to an acquittal is a doubt of guilt reasonably arising from all the evidence in the case. The proof is deemed to be beyond reasonable doubt when the evidence is sufficient to impress the judgment of ordinarily prudent men with a conviction on which they would act without hesitation in their own most important concerns or affairs of life. In other words, in a legal sense, a reasonable doubt is a doubt which has some reason for its basis. It does not mean a doubt from mere caprice or groundless conjecture. A reasonable doubt is such a doubt as the jury are able to give a reason for." It seems almost unnecessary to undertake to explain and elucidate to the average juror, who is presumed to possess ordinary intelligence the meaning of the expression, "reasonable doubt," which appears to have been chosen by the common-law judges, and adopted by text writers, on account of the simplicity of the phrase. While the language employed by the courts to define the expression, and assist jurors in its application, is often beyond their comprehension, if not misleading, we see nothing in the foregoing instructions that could result in any prejudice to the defendant, and we would therefore be reluctant to reverse the case upon the assignment of error relating thereto. In the recent case of State v. Morey, (Or.) 36 Pac. 573, the trial court defines a reasonable doubt as "such a doubt as a juror can give a reason for," and, in the opinion, sustaining a conviction, upon rehearing, the court said: "If every criminal case is to be reversed for some technical inaccuracy in the definition of a "reasonable doubt," then indeed, the administration of justice becomes impracticable." Mr. Starkle in the 9th American edition of his work on Evidence, at page 865, says: "A juror ought not to condemn, unless the evidence excludes from his mind all reasonable doubt as to the guilt of the accused, and unless he be so convinced by the evidence that he would venture to act upon the conviction in matters of the highest concern and importance to his own interest." The able law writer Austin Abbot, in his Brief for Criminal Cases at page 487, discusses a "reasonable doubt," and says: "The gist of the rule is that the law

contemplates a doubt for which a good reason, arising on the evidence, can be given,"—and cites People v. Guidici, 100 N. Y. 503, 3 N. E. 493. Instructions have been frequently sustained on appeal which admonish the jury that a "reasonable doubt" is not a captious doubt, a possible doubt, a conjectural doubt, an imaginary doubt, a far-fetched doubt, because everything relating to human affairs and depending on moral evidence is open to conjecture and speculation, and because the law does not require absolute certainty. 2 Tomp. Trials, p. 1832, and numerous cases there cited. A decision of the question presented does not require us to formulate a definition of the expression "reasonable doubt," nor will we attempt to enumerate such as we may approve or regard least objectionable. We find that language in effect the same as that employed in the instruction complained of has met with approval, and we are convinced that the defendant in this case was not prejudiced by the court's efforts to enable the jury to distinguish a reasonable from an unreasonable doubt. Finding in the record no reversible error, the judgment of the trial court is affirmed.