## STATE v. BERT RONK.[1]

February 5, 1904.

Nos. 13,707—(21).

**Return on Appeal.**

The authenticated return of a cause by the trial judge cannot be questioned in this court on appeal, but we are required to accept such return as a verity. The only method of correcting mistakes in the bill of exceptions or settled case certified here by the proper authority is in a direct proceeding by mandamus to secure a further return.

**Bill of Exceptions.**

Where the subject of contention on appeal is presented by a bill of exceptions, a reversal can only be secured when the facts under review exclude every reasonable hypothesis consistent with the verdict or result reached. Upon such review in the appellate court, error will not be presumed, but must be affirmatively shown.

**Corrections by Trial Judge.**

Upon the settlement of a bill of exceptions, the minutes of the clerk of the court during the trial are not conclusive evidence of what transpired therein, but the trial judge may, of his own knowledge, or from references to the reporter's transcript, determine the true facts.

[1]Reported in 98 N. W. 334.

**Sickness of Juror.**

A judicial determination by the court that a juror is sick may be reached from personal observation of the juror in connection with the statements of counsel, and such knowledge will justify action in excusing the sick juror from further service on the panel.

**Substituted Juror—Trial.**

Defendant was prosecuted for murder in the second degree. A jury was regularly impaneled, several witnesses were sworn, and their evidence received, when one of the jurors became sick. Adjournments were taken for that reason, when it was apparent that the sick juror would be unable to take further part in the trial. The court having found these facts, defendant consented that the sick juror be permanently excused, that a new juror be called to take his place, and that the trial proceed with the present jury. The court then discharged the sick juror, and issued a venire for ten persons from whom to fill the vacancy. When the special venire was returned, defendant excused the first venireman called, but accepted the second, who was sworn as the twelfth juror, whereupon the trial proceeded anew. Defendant and his counsel participated thereafter without objection. *Held*, that the consent of defendant to the course of procedure thus adopted precludes him from complaining that the entire panel was not discharged when the sick juror was relieved, or that he has been denied his right to a trial by a fair and impartial jury.

**Witnesses not Recalled.**

Upon the trial anew, it is apparent from the bill of exceptions that the state recalled all the witnesses previously sworn and examined but two, and that defendant with the aid of his counsel without objection to such course participated in the trial. Upon an examination of the evidence of the two witnesses not recalled, in connection with other testimony returned, *held*, that it does not appear that their evidence was of such materiality or so beneficial to the defendant that he was prejudiced by the failure of the state to recall them.

**Right of Defendant.**

It affirmatively appearing from the return that there was evidence introduced before the reselected jury who returned the verdict of manslaughter in the first degree, *held* that, upon the consent of the defendant to accept the eleven jurors and proceed with the trial after the acceptance of the new juror to fill the place of the one discharged, the most defendant had a right to demand was that the new juror be sworn, and that witnesses for the state having knowledge of the facts favorable to the defendant should be recalled for his benefit.

**Self-Defense.**

It was not questioned that deceased came to his death from a bullet fired by defendant from a rifle, but it was sought to justify the latter's

conduct upon the ground of self-defense. There had been trouble between the parties. Deceased was hunting, and had a shotgun, which was known to defendant. The latter, while walking in an opposite direction, claims that he was fired at by the deceased; that he sought to escape by running when he received a charge of shot in his back; that he then turned and fired several shots from his rifle in the direction from which the charge of shot came, to protect himself; for the purpose of showing that he believed he was in danger of his life or great bodily harm, it was attempted to introduce proof of several specific offenses previously committed by the deceased, indicating the latter's quarrelsome disposition, but of which defendant had no personal knowledge, and in which he had not been concerned, although he had information thereof. *Held,* that this evidence was properly excluded.

### Evidence of Experiments.

A witness who was a gunsmith had made experiments, not in the presence of the court, nor under its direction, in firing a Winchester shotgun similar to the one which the deceased had at the time it was claimed he had shot at defendant; and it was attempted to show at the trial by this witness the result of such experiments, and of tests made by him, which the court refused to permit. *Held* not to be error.

### Impeaching Witness.

A prisoner confined in the county jail gave evidence for the state of conversations which he had overheard between defendant and a third party. For the purpose of impeaching the veracity of this witness, the record of an indictment against him for an offense for which he had not yet been tried was offered, which was excluded. *Held,* that such exclusion was proper.

### Charge to Jury.

The court, in its general charge, instructed the jury upon the law relating to murder in the second degree and to manslaughter in the first degree, but did not specifically instruct the jury upon the law of manslaughter in the second degree, and was not requested to do so in behalf of defendant. *Held,* upon the only evidence returned, that it is not apparent that the defendant was prejudiced in this respect.

### Refusal to Give Instructions.

Certain specific instructions asked by the defendant have been considered, and *held* that it was not error for the court to refuse to give the same, for the reason that these requests stated abstract propositions relating to the rights of society and enforcement of criminal laws, and, where reference was made to the evidence, were sufficiently covered and guarded in the general charge of the court, which embraced all that was necessary to protect the rights of the defendant upon the issues submitted.

**Newly-Discovered Evidence.**

>    Application for a new trial upon the ground of newly discovered evidence *held* to have been properly denied.

Appeal by defendant from an order of the district court for Faribault county, Quinn, J., denying a motion for a new trial, after a trial and conviction of the crime of manslaughter in the first degree.   Affirmed.

*Morgan & Meighen* and *C. N. Andrews,* for appellant.

*W. B. Douglas,* Attorney General, *H. L. Bullis,* County Attorney, and *Frank E. Putnam,* for the State.

LOVELY, J.

Bert Ronk was accused of the crime of murder in the second degree in an indictment charging, with appropriate averments of scienter, that he shot and killed Charles Eberlein, at Brush Creek, on March 17, 1903. He was brought to trial at the June term of the Faribault county district court for that year, and convicted of manslaughter in the first degree. Upon a bill of exceptions settled by the trial court, there was a motion for a new trial, which was overruled.   From this order, defendant appeals.

The bill of exceptions does not contain all the evidence or proceedings, but such portions only as are considered material to the contentions urged for defendant; and it is insisted that it conclusively appears therefrom, with the clerk's minutes in connection with affidavits presented on the motion to settle the bill of exceptions, that there were errors in the selection of the jury and the orders of the court during the trial which legally prejudiced defendant's rights.

When the case came on for trial, a jury was regularly impaneled and sworn, the state proceeded to present its evidence, and several witnesses were examined, when one of the jurors (J. H. Allen) became sick. There was an adjournment on this account.   When the trial again proceeded, the sickness of the juror continued, and other adjournments were had, when, to quote from the bill of exceptions,

>    The defendant being present with his attorneys, the juror Allen appearing to be so seriously sick as to be unable to perform his duties as a juror,  *  *  *  the defendant consents that such juror  *  *  *  be permanently excused, that a new juror be

called to take his place, and that the trial proceed with the present jury.

The following order was then made by the court and entered in the clerk's minutes:

> In the case of State v. Bert Ronk, accused of murder in the second degree, and now upon trial on that charge, and the jury having been impaneled, and considerable testimony having been taken, * * * and it appearing to the satisfaction of the court that one of the jury is sick and unable to perform his duties as a juror, and that there is no probability that he will be able to resume his duties within a reasonable time, it is ordered that he is hereby excused from further attendance * * * upon this trial.

A special venire for ten jurors was then issued and delivered to the sheriff. The eleven jurors remaining on the panel were excused until three o'clock of the same day. The sheriff returned the venire with ten persons whom he summoned thereon, when

> It was agreed by the parties that the challenges should be tried by the court. One Chris Steiner was sworn to answer as to his qualifications, when he was challenged peremptorily by defendant. S. C. Sandon, of the venire, was then called. No challenge was interposed by the accused or the state, and he was accepted and sworn as a juror in the case. The panel being thus completed, the court excused the jury until the following Monday at ten o'clock.

On the return of the jury at the time named, all the jurors originally sworn, except Allen, excused, with Sandon in his place, were present, and the trial proceeded. The eleven jurors originally accepted were not resworn, and, from the course of the trial as appears from the return, it is apparent that the state again recalled all the witnesses who had been previously examined, with the exception of two, to whom reference will be made, and that the evidence thereafter received tended to sustain the offense for which defendant was convicted.

It is now urged in behalf of defendant that the procedure thus adopted in filling Allen's place, and for the resumption of the trial, was illegal,

and in violation of the constitutional rights of defendant, who was thereby denied a trial by a fair and impartial jury. This claim is based, first, upon the ground that the return of the presiding judge, showing that the defendant consented to the course adopted, was not in accordance with the facts as they actually occurred; and, second, that, conceding the defendant did so consent, his rights are not affected thereby, but he may on this review avail himself of any objections to the final formation of the jury who returned the verdict, to the same extent as if he had remained mute, and the court's order had been made without his affirmative approval.

Defendant tendered what was claimed to be a correct copy of the clerk's minutes taken during the trial, which contained no mention of the alleged acquiescence of defendant in the course pursued, and insisted that this should be adopted as the authenticated report of the proceedings at the trial. The court was not satisfied with the completeness of this statement, and incorporated therein, on motion of the state, as an amendment, the defendant's assent to the discharge of the juror Allen, and his agreement to proceed with the eleven jurors already sworn. On the hearing to settle the bill of exceptions, there was a dispute between counsel as to these facts. Counsel for defendant offered a number of affidavits in connection with the transcript from the clerk's minutes embracing the order of the court from which we have quoted, to show that the return, as offered, should have been signed and certified by the judge, who declined to adopt the bill proffered, but certified the return as amended; and it is now seriously insisted that, notwithstanding such authenticated return of the court, we should consider these affidavits, and treat as an original proposition the question whether the disputed facts on such issue are proper for review here, and, if not found to accord with the return, that we either act upon the real facts in that regard as we find them to be, or order a new trial upon the ground that the return is not correct. This is certainly a novel proposition, presented for the first time in this court.

The claims of the defense in this respect, carried to their legitimate conclusion, would authorize this court, on a review in error, to determine upon ex parte affidavits the proceedings and evidence, in every respect, occurring at the trial, upon a showing by proofs that are very unsatisfactory, and at best must be delusive and misleading. We are

unable to countenance such an unheard-of procedure, whereby it is thus attempted to delegate to this court original jurisdiction beyond its authority. We can no more hear and determine upon affidavits what were the transactions at the trial in such a case, than we could decide upon such showing the result of evidence submitted to a court or jury. A very cursory glance at any volume of judicial reports in this country will indicate the universal rule, resting upon necessity, that appellate courts are limited in their consideration of returns to such facts as are certified by the presumably impartial trial judge who heard the cause.

The experience of the members of this court at the bar, as well as on the bench, justifies the opinion, which is, we believe, shared generally by the members of the legal profession, that the only authority to be depended upon for an accurate return of the proceedings upon appeal is the presiding judge. In all matters of controversy regarding the proceedings which are to be reviewed, there must be some final arbiter, as well as an end to such controversy, before it comes here for review. The appellate court cannot know what transpired at the trial, and therefore cannot amend a case which should first have been settled. From the very nature of the subject, and the necessities involved in a determination of such issues, this power and duty have been imposed upon the judge who tried the cause, who is better qualified for its performance than any one else. The statute on this subject provides that the accused, after trial, may allege exceptions to the opinion, direction or judgment from which he appeals,

> "Which exceptions, being reduced to writing in a summary manner and presented to the court any time before the end of the term or at any special term thereafter which the court may designate for such purpose, and being found conformable to the truth of the case, shall be allowed and signed by the judge." G. S. 1894, § 7390.

This is the only way provided for by which alleged errors can be presented to us, and we cannot do that which would, in effect, be to change the essential verity which belongs to the certified return of the judge who tried the cause. The high opinion which we entertain of the integrity and impartiality of the learned judge who heard the cause will not permit the suspicion that the defendant, in this respect, has been de-

prived of that fair report which the judges of original jurisdiction are universally willing to give when an examination of their orders is questioned on review.

It is but proper to say in this connection that it appears from the memorandum of the trial judge that the adopted amendment is an exact transcript from the court stenographer's minutes, and conformable to its recollection of the facts, and we have no right to doubt its accuracy. The minutes of the clerk of the court did not contain the amendment, but the clerk was not required to enter the same. Evidence of witnesses or the remarks of the court are seldom recorded by the clerk, and not required to be; and it follows, as a matter of law, that, whenever it is material to include important facts occurring at the trial in the authenticated return, the recollection of the judge, refreshed by or independent of the stenographer's transcript, must be an available source upon which he depends, and will not be questioned here because not found or supported in the clerk's minutes. In view of these conclusions, we have declined to enter upon a consideration of the affidavits presented on the settlement of the bill of exceptions.

We do not intend to hold that an arbitrary denial of its duty by a trial judge to certify a case to this court, or to include in the bill of exceptions or settled case facts necessary to a review of the record on appeal, is wholly remediless. This court has, in the exercise of its authority to correct the action of the trial court in this respect, exercised its jurisdiction to secure such rights, when refused, by mandamus. State v. Cox, 26 Minn. 214, 2 N. W. 494; State v. MacDonald, 30 Minn. 98, 14 N. W. 459; Sherman v. St. Paul, M. & M. Ry. Co., 30 Minn. 227, 14 N. W. 797. We have no doubt, either, that in a clear case, and in proper proceedings directed to the trial judge, the power of this court is sufficient to correct an imperfect or untrue return; but it is equally as clear that the original authority to determine contested questions of fact in such a proceeding is with the trial court, and when this duty is fairly exercised it will be treated as conclusive in this court, and the bill of exceptions before us must be the basis of and control our action upon the errors alleged.

The emergency which arose through the unfortunate sickness of the juror Allen, we have no doubt, authorized the trial judge, upon its finding thereon, to relieve him from further service upon the panel. Rea-

son, humanity, and the rights of the defendant would require such a course; and it is also clear that the finding of the court, based upon its observations, and statements of the juror or of counsel, showing that such juror was so ill that he became incapacitated for the performance of his duties, furnished sufficient grounds for a judicial determination of that fact, which was the effect of the order.    State v. Borgstrum, 69 Minn. 508, 72 N. W. 799, 975; Mathews v. Board of Co. Commrs. of Lincoln Co., 90 Minn. 348, 97 N. W. 101.

The only statutory authority for the discharge of a jury in a criminal cause is restricted to occasions where, after the retirement of the panel to deliberate on the verdict, one of their number becomes sick, or through accident or other cause the jury is unable to agree (G. S. 1894, § 7337), in which case they may be discharged by the court; but this did not meet the difficulty arising in this case, which occurred while the trial was in progress, and the court was led to apply the supposed remedy in section 5373, G. S. 1894, which prescribes:

> "If, after the impaneling of the jury and before a verdict a juror becomes sick so as to be unable to perform his duty, the court may order him to be discharged; in that case a new juror may be sworn and the trial begin anew, or the juror may be discharged and a new jury then or afterward impaneled."

But this provision relates distinctively to procedure in civil actions, and had the court, without the expressed consent of the defendant, enforced its observance, the manifest difficulties which would have arisen from such an irregular course would have furnished substantial weight to the alleged error.

We have no doubt, under the authorities, that the proper course to have been pursued by the court, if compelled to act upon its own motion in the exigency thus presented, would have been to have discharged the entire panel, and to have summoned a new jury at the same or a succeeding term, when the defendant would undoubtedly be entitled to his challenges to each of the jurors when called.    People v. Stewart, 64 Cal. 60, 28 Pac. 112; People v. Brady, 72 Cal. 490, 14 Pac. 202; 1 Bishop, Cr. Pr. § 948; Wharton, Cr. Pl. & Pr. § 508, and note.    But it appears that the court did not of its own motion enforce the civil statute as its rule of action, for the defendant expressly consent-

ed to the discharge of the sick juror, and the acceptance of a new juror in his place, and it still remains to be determined whether the consent thus given by the defendant precludes him from claiming that he has been deprived of his constitutional right to a trial by a fair and impartial jury. He was not, in the adoption of this course, deprived of a hearing by the number essential to constitute the panel. Twelve men were in the box whom he had accepted, and the state, with apparent fairness, proceeded to retry the cause de novo. It is impossible to avoid the conclusion that by reason of the acceptance of this jury, and the course of procedure to which defendant agreed, he should not now be heard to say he was deprived of privileges which he had expressly waived, unless there is something inherently necessary in the safeguards which the law confers upon and throws around the accused, so that his consent to the forms of procedure by which a jury in a criminal cause is selected is vital, and their disregard an infringement of the organic law.

There is much force in the claim, when properly made, that the defendant should not be required affirmatively to object to any course of procedure affecting the selection and impanelment of the jury which is irregular and might affect his rights. It may be said with some show of reason that he ought not to be required to insist on the observance of the proper practice for his protection in this respect, for his objections might be treated as the exhibition of contumacy, and excite prejudice against him before his triers; but this is not the case before us, and authorities which have been cited resting upon the ground that his failure to object or to assert his rights should not be required do not meet the situation where the method is of defendant's own choice, for it must be presumed in such case that he desired to retain jurors, rather than take his chances with a new panel. It is not within the capacity of the law to secure to a person accused of crime a trial by an absolutely impartial jury. More cannot be required than that sufficient and reasonable means be provided by the legislature through which such result may be fairly attained. In other words, in the execution of the means which the lawmakers provide to enforce the guaranties of the organic law, the end to be effected must be through the adoption of a reasonable and practicable method to secure attainable ends. When this has been done, nothing more can be demanded, from the very nature of things.

In providing for the selection of jurors in criminal cases in this state, we recognize the right of the accused when each juror is called, to object to him upon specified grounds; but they may be waived. The accused need not challenge at all; but, without giving a reason for his course, which may be either that he is pleased with a juror, or that he considers him impartial upon the knowledge which he possesses, he may be accepted. This practice, authorized by chapter 116, G. S. 1894, has long been observed in criminal trials here and in other states. While there are authorities which hold very strictly to the rule that a defendant in a criminal cause is not required to object to any departure from the forms of procedure, this was a rule early adopted in England to mitigate the severity of the law, which denied counsel to the accused in cases of felony, and has often been followed with unnecessary strictness by courts in this country, yet "cessante ratione legis cessat et ipsa lex." The right of the accused to appear and assert every privilege to which he is entitled, from the beginning to the end of the trial, through counsel of his own selection, or furnished by the state if he is unable to pay for such aid, would seem to remove every reasonable ground for holding that he may consent to the selection of an individual juror or to the entire panel in any practical way consistent with the policy of our law. Hence we conclude that the course adopted in this case with defendant's consent deprives him of the right to insist that he was prejudiced in the retention of the eleven jurors, the discharge of Allen and the substitution of Sandon in his place. It must also be implied that the oath previously taken by the eleven jurors continued to affect their conduct during the trial, and that they were not required to be resworn.

From what must be presumed, in connection with what is returned in the bill of exceptions, we are required to adopt the view that the claim of the state that there was such hostility between the defendant and the deceased as to furnish evidence of motive for the offense charged. The deceased was found dead in a boat on the water, which is practically a part of a lake, very near a grove, situated on higher ground, some distance therefrom. The defendant was a good shot with a rifle. He had been hunting with his brother-in-law on the day of the homicide. The two had gone around the lake in their hunting expedition, shot rats and ducks during the afternoon, heard shooting in the direction of the grove, and had reason to suppose that it was by the deceased, who

was hunting with a shotgun. Defendant started to return home, pass-ing around the lake, when he heard shooting again. In going along the edge of the grove, defendant claims that a charge of shot was fired towards and past him, which must have been by the deceased. Believ-ing that he was being fired upon, he then ran, to avoid injury, and was struck squarely in the back by a charge of shot; hearing at the same time the pump of a gun, and seeing its blaze. He was then in the timber, and remarked that some one was shooting at him, who he knew was the deceased. The day was dark and foggy, and he states he was not able to see a boat in the water, or objects at a distance; and, without recalling his exact position, or thinking that he could protect himself by the trees, he turned immediately and fired three or four shots from his rifle, without aim, in the direction from which the charges of shot came, then turned and rapidly ran from the place, until he reached a safe distance and proceeded to his home. The necessity of stating this portion of the evidence arises from the claim made by the defendant that he was prejudiced by the failure of the state to recall certain wit-nesses who had been examined before the juror Allen had been dis-charged.

It appears, when the trial proceeded anew before the panel which re-turned the verdict, two witnesses (Klenk and Novotny) were not exam-ined by the state; and it is now insisted that the defendant was prej-udiced by the failure of the state to recall these witnesses, since eleven of the jurors had heard evidence which the twelfth one (Sandon) had not, and were thus given an opportunity, in their discussion upon re-tirement, to urge upon Sandon a consideration of points which he had not heard, to strengthen possible hostile views to the defendant. The court instructed the jury that they were to perform their legal duty, and decide the issues upon the evidence, which applied to each and every juror; and it cannot be presumed that they did not do so, or that any juror disregarded his oath. But conceding, for the purposes of this case, that it was the duty of the state on the trial de novo to reproduce the entire testimony already received, it was incumbent upon the de-fendant to show that any omitted portion was of material benefit to him, and he was prejudiced by the failure of the state to re-examine these witnesses.

The evidence of Klenk related to a conversation which he had with defendant shortly after the homicide, when he made a casual inquiry whether "it was so about Eberlein, and asked defendant if he thought it was so," when defendant replied to the effect that he thought it was. The question of Eberlein's death, or that he was killed by a shot fired by defendant, is not open to contention on the return in this case, and it is impossible to see how this evidence could have been at all important under any view.

The evidence of the witness Novotny, who was an expert, was to the effect that, in firing the shots of defendant's rifle, the shells would be discharged more quickly if fired therefrom rapidly than if more slowly. If we can imagine that which is not clearly made to appear from the bill of exceptions—that the location of the shells discharged from the rifle would indicate whether the shots were fired rapidly or not, as seems self-evident and a matter of common knowledge—the statements of this witness could not be material. The defendant was unable to state the exact position where he was when he fired these shots, and, giving to the evidence of the witness in this respect effect upon any hypothesis we can surmise, it is impossible to see how his opinion could have affected the question of defendant's intent, which was the real question at the trial, and there is not enough in the bill of exceptions returned to indicate that such evidence was material either way. And it would seem to us to be little better than trifling to hold that, because the state did not recall him, the defendant was prejudiced by such omission.

The state might have been unable to recall these witnesses, and could not, without the defendant's request, read the testimony previously given, and there is nothing to show that any such request was made. Defendant having consented to proceed with the trial as he did, the most that could be demanded of the state was to reproduce fairly and justly any testimony before the new juror that would be beneficial to the defendant, and it is not made to appear that there was a failure to comply with this duty.

Upon the claim that the deceased entertained feeling of resentment and enmity towards defendant, the latter was permitted to show the quarrelsome disposition of the former by proof of his general reputation in that regard; but it was also attempted to show that the de-

ceased had been guilty of a number of distinct and specific acts of violence towards third parties, running back over many years of his life, in which defendant was not connected, and of which he had no personal knowledge, although he had been informed thereof. This was properly excluded by the court. The character of the deceased is only material where the killing is under such circumstances as create a doubt whether the offense was committed, or where it is claimed that the defendant acted under a reasonable fear of his life from the deceased's temper, in connection with previous threats, when it would be a part of the res gestæ to show his evil and quarrelsome character, to explain or throw light upon the encounter. State v. Dumphey, 4 Minn. 340 (438). While the credit of a witness or individual might be more effectively destroyed by proving specific acts than his repute, it has always been the strong policy of the law that the issue of character, when relevant, can only be attacked or established by proof of reputation, to avoid collateral issues, and the evils resulting from their interjection into trials, wherein such proof would divert attention from the essential issues involved. State v. Hayward, 62 Minn. 474, 65 N. W. 63.

On the trial the defendant produced an expert gunsmith, and offered evidence of experiments made by him out of court. These offers were in the form of exhibits, and were board targets of pine. There was nothing before the court to show that the witness explained the manner of manipulation or the capacity for the rapid firing of the shotgun, or that he had any actual knowledge of the shooting qualities of the gun of deceased, although he said it was substantially the same kind of a gun. The court refused to allow the targets to be received or the result of the experiments given by the witness. While it is permissible to allow experiments to be made before the jury in a proper case, this is within the sound discretion of the trial court. Smith v. St. Paul City Ry. Co., 32 Minn. 1, 18 N. W. 827. But it is improper to permit a witness who has made experiments not in the presence of the court, for very obvious reasons, to detail the circumstances thereof. Thiel v. Kennedy, 82 Minn. 142, 84 N. W. 657.

During the period of defendant's incarceration in the county jail, previous to his trial, there was also confined there a prisoner named Ryan. The state produced from this witness evidence tending to show

that he had overheard statements between defendant and his brother-in-law showing a purpose to concur in a story on the trial, with other evidence which was material to the issues. An offer was made by defendant to show by the court records that this witness had been indicted for a felony, which was excluded. It was clearly incompetent to show for the purpose of impeachment that a witness has been accused of a criminal offense in no way relating to the subject under investigation, and the court properly excluded the evidence offered.

The court, in its charge, left it for the jury to say whether the defendant should be convicted or acquitted of murder in the second degree, or manslaughter in the first degree. Defendant made no request to have the issue of his guilt or innocence of manslaughter in the second degree submitted, but now complains that the court erred in not authorizing a finding upon this degree of homicide. While it is the duty of the court to instruct the jury upon the different degrees of homicide within the legitimate scope of the evidence, yet, where there is no doubt as to the degree of the crime of which the person on trial is guilty, if guilty at all, and no evidence to justify a verdict of any less degree than the one submitted, the refusal to instruct thereon is proper; and we are unable, from our examination of the return in this case, to discover in what way the statutory definitions of manslaughter in the second degree were applicable to either the issues or the evidence. State v. Nelson, supra, page 143.

The general charge of the trial judge was full, clear, and impartial. The defendant seems to have been given the benefit of such qualifications and limitations upon his right of self-defense as were required, and various instructions refused did not contain necessary qualifications; from a patient examination of their relation to the issues presented in the return, we are unable to discover that the court erred in refusing any of them.

On application for a new trial, upon the ground of newly discovered evidence to show that, some twenty-eight years previous to the trial, deceased had been indicted in Hennepin county for murder, and convicted of a lesser degree of homicide, and sentenced to two years' imprisonment, we hold that the effect of this testimony would be to prove a specific, remote act, having no other tendency than to show the quarrel-

91 M.—28

some character of deceased, of which defendant had not personal knowledge; and the court was fully justified, upon legal grounds, in refusing a new trial for the purpose of allowing such testimony to be presented thereat.

We find no reversible errors in the record returned, and the order denying a new trial must be affirmed.