## STATE v. RAICE.

Where, in homicide, self-defense was not pleaded, evidence as to why defendant was afraid of deceased was irrelevant.

A question asked defendant as to why he was afraid of deceased was objectionable as calling for a conclusion.

Where, in a prosecution for homicide, defendant pleaded mental incapacity, he was not prejudiced by a question as to why he had sufficient mental capacity to get the gun if he·did not know what he was doing, which he was compelled to answer that he did not know how he did it.

Where the subject of accused's mental capacity was gone into on direct examination, the state, in cross-examining him with reference thereto, was entitled to ask why he had sufficient capacity to get the gun if he did not know what he was doing when he killed deceased.

Proof that deceased had been guilty of acts of violence to third persons of which 'accused had been informed was inadmissible in a prosecution for homicide.

Where self-defense was not an issue in a prosecution for homicide, evidence of accused's reputation for turbulence and violence in the city where he lived was irrelevant.

An instruction that, if the jury should believe any witness had wilfully testified falsely to any material fact, they might disregard the whole of such witness' testimony, was not defective for failure to add the limitation, "unless such testimony was corroborated by other credible evidence."

Where accused testified that his mind was a blank when he shot deceased, the court was justified in charging that, if the jury believed that any witness had wilfully testified falsely to any material fact, they could disregard his entire testimony.

An instruction that a "reasonable doubt" is one for which a reason can be given; a substantial doubt based on the evidence, or want of evidence in the case, and not a bare possibility of defendant's innocence; such a doubt as would cause a reasonably prudent man to pause before acting in the highest affairs of life—is proper.

Where several witnesses friendly to accused, who were present at the killing, testified to what took place immediately prior to the shooting, newly discovered evidence of another, who claimed to have seen the difficulty, that, immediately before the firing of the shot, deceased was in the act of making an assault on defendant, was quite close to him, and was in an ugly mood, was cumulative, and not ground for a new trial.

An affidavit of a witness in support of a new trial for newly discovered evidence, stating that deceased prior to the shooting was in the act of making an assault on defendant, was defective for failure to state the facts.

(Opinion filed, Nov. 17, 1909.)

Appeal from Circuit Court, Lawrence County. Hon. WILLIAM G. RICE, Judge.

Elija Raice was convicted of manslaughter, and he appeals. Affirmed.

*Henry Frawley, Henry G. Perry,* and *John T. Heffron,* for appellant.

The instruction asked was erroneous because it authorized the jury to disregard all of the evidence of the impeached witness, when there should have been added to it the qualifying phrase, "unless such testimony was corroborated by other credible evidence." Moran v. People, 45 N. E. 230; Peak v. People, 76 Ill. 289; F. Dohman Co. v. Niagara Ins. Co., 71 N. W. 69; Maxwell

v. Williamson, 35 Ill. 529; Chittenden v. Evans, 41 Ill. 251; Allen v. Murray, 57 N. W. 979. There is no evidence in the record where any witness has *willfully* testified falsely to any *material* fact. There was no evidence upon which to predicate such an instruction and hence should not have been given. Instructions given where there is no evidence upon which to predicate them are only calculated to mislead the jury and are erroneous. Moran v. People, 45 N. E. 230; 11 Am. & Eng. Enc. of Law 248; Beover v. Taylor, 1 Wall. 637; State v. Bailey, 57 Mo. 131. Under an indictment for murder, the defendant, if guilty at all, may be convicted of murder, or the included crime of manslaughter, and the law makes it the duty of the jury to determine whether the conviction should be for the one or the other. In such cases the court cannot say to the jury by instruction that if certain facts (enumerating them) are true they should find the defendant guilty of murder. The jury should be left free to determine the degree of guilt. Panton v. People, 2 N. E. 411; Lynn v. People, 48 N. E. 964; People v. Holmes, 69 N. W. 501. There is no evidence in the record tending to show manslaughter in the second degree, and an instruction on this point had a tendency to confuse and mislead the jury. An instruction should not be given unless there is some evidence upon which to predicate same. State v. Whittaker, 12 Pac. 106; Beavers v. State, 15 S. W. 1024; State v. DeWolf, 74 Pac. 1086; People v. Ward, 66 Pac. 372; Lyman v. People, 64 N. E. 974; Baxter v. Campbell, 17 S. D. 475, 97 N. W. 368. When application for a new trial in a criminal case is made on the ground of newly discovered evidence, and it conclusively appears that the new evidence is in fact newly discovered, that it is material for the party applying, and could not with reasonable diligence have been discovered and produced on the trial, and the effect of the evidence is doubtful or impossible to determine, a new trial should be granted. State v. Keleher, 87 Pac. Rep. 738; Lindley v. State, 11 Tex. App. 283; 14 Ency. Pl. & Pr. 842; Dennis v. State, 2 N. E. 349; State v. Lowell, 99 N. W. 125; State v. Stowe, 3 Wash. 206, 28 Pac. 337; Clerk v. State, 102 S. W. 1136; In McClellans Estate, 20 S. D. 498, 111 N. W. 540.

*S. W. Clark, Atty. Gen.,* and *Robert W. Stewart,* for the State.

An instruction that: "If a witness or a party has testified falsely on this trial as to any material fact in the case, you are at liberty to disbelieve and reject all the testimony of such witness," clearly and sufficiently state the law on the subject. State v. Sexton, 10 S. D. 130; Fraser v. Haggerty, 49 N. W. 616; Minich v. People, 9 Pacific, p. 12; State v. Thompson, 21 W. Va. 746; State v. Dwire, 25 Mo. 553; People v. Sprague, 53 Cal. 491; State v. Van Sant, 80 Mo. 71; State v. Hale, 56 S. W. 882. The general moral character of a victim of a homicide is immaterial on the trial of his slayer, but, if the latter adduces evidence that the killing was done in self-defense, he may prove that the general reputation of the decease was of a quarrelsome, and violent man. People v. Rodawald, 177 N. Y. 408; Commonwealth v. Straesser, 26 Atlantic 17; Franklin v. State, 29 Ala. 14; Bowman v. State, 21 S. W. 48. The jury could not have been confused or misled as to the fact of the commission of the offense or as to its degree under the statute, instructing the jury as to the lesser offence included within a higher offense for which the defendant was on trial can never affect or prejudice any substantial right of the defendant. State v. Horn, 21 S. D. 237, 111 N. W. 552; State v. Campbell, 77 N. W. 935; Hughes on Instructions to Juries, Section 274. It is not error to instruct on the law of manslaughter when there is no evidence tending to prove that crime. Goodwin v. State, 46 S. W. 226-228; State v. Cunningham, 82 N. W. 775.

McCOY, J. In this case the defendant, Elija Raice, was informed against and charged with the murder of one Mitchel Ogresto. On the trial the jury found the defendant guilty of manslaughter in the first degree, and, on judgment, was sentenced to a term in the penitentiary. Defendant brings the cause to this court alleging numerous errors to have occurred on the trial.

There is but little conflict in the evidence. From the evidence preserved in the record, there seems to be no dispute but that on the night of May 2, 1908, the defendant was engaged in operating a gambling wheel in the back room of his saloon in the city of

Lead; that Mitchel Ogresto came into the room and interfered with the game; that defendant told him to leave the room, and Ogresto said he would not; that a quarrel ensued, and defendant went out into the barroom followed by Ogresto; that Ogresto there called defendant many mean and insulting names calculated to highly provoke and anger defendant; that defendant first picked up a stove poker and told Ogresto to leave his place of business, and Ogresto refused to go and continued to call defendant insulting names; that defendant then stepped behind the bar, picked up a revolver, and, stepping from behind the bar, shot Ogresto where he was standing some 12 or more feet from defendant, from the effects of which shot Ogresto the next day died. The evidence is undisputed that, at the time the shooting occcurred, Ogresto made no offer to assault or otherwise molest defendant, other than to call him insulting names. Defendant, who testified in his own behalf, made no claim that he shot in self-defense, nor was self-defense one of the issues presented by the evidence. Defendant testified that he had no recollection of having shot Ogresto; that his mind was a blank at that time.

The first error alleged is based upon the rejection of certain evidence. On the trial, after having testified that he was afraid of Ogresto, defendant was asked the following question: "Why were you afraid of him?" To which question the state objected as irrelevant, immaterial, and incompetent, and no proper foundation laid. The objection being sustained, the defendant excepted. We are of the opinion that the ruling of the court was clearly right. When self-defense is not an issue, it is immaterial and irrelevant why defendant was afraid of deceased, and the rejection of such evidence clearly could not have prejudiced defendant, and, besides, the question propounded called for the conclusion of the witness, and not for the statement of a fact.

On the trial defendant, when on the witness stand, was asked the question why he had sufficient mental capacity to go and get the gun if he did not know what he was doing, to which question defendant objected on the ground that it was a matter for the jury to decide. While we are of the opinion that this question called for a conclusion, and not a statement of fact, still we

are of the opinion that, although defendant was required to answer that he did not know how he did it, it in no manner prejudiced the defendant and had no possible tendency to affect the verdict. The subject of the mental capacity of the defendant was gone into on the direct examination, and the state had the right to cross-examine upon the same subject.

Batinovich, the business copartner of defendant, was called as a witness, and asked if he had not, at some other time about two weeks prior to the shooting in question, had some trouble with Ogresto in the same saloon, and that prior to the shooting he had informed defendant of it. The court sustained an objection to this evidence on the ground that it was irrevelant and immaterial. We are of the opinion that the ruling was correct. Proof that deceased had been guilty of acts of violence to third persons of which the defendant had been informed is inadmissible. State v. Ronk, 91 Minn. 419, 98 N. W. 334; People v. Henderson, 28 Cal. 465; State v. Andrews, 73 S. C. 257, 53 S. E. 423; Thomas v. People, 67 N. Y. 218; Croom v. State, 90 Ga. 430, 17 S. E. 1003.

The defendant assigns as erroneous the rulings of the trial court in excluding, on objections of the state, evidence offered by defendant as to the reputation of Ogresto, deceased, for turbulence and violence in the city of Lead. This character of evidence is inadmissible where self-defense is not claimed and is not an issue in the case. Unless the circumstances show that the defendant acted in self-defense, or was in imminent danger, or believed himself to be in danger of death or previous bodily harm, the bad character of the deceased will not avail him. 4 Elliott, Ev. 3038, 1 Wigmore, Ev. 63; State v. Morey, 25 Or. 241, 36 Pac. 573.

The court, among other things, instructed the jury that, "if they should believe any witness in the case had willfully testified falsely to any material fact, they would be at liberty to disregard the whole of such witness' testimony." Appellant contends that this instruction was erroneous, because it did not have added thereto the qualifying phrase, "unless such testimony was corroborated by other credible evidence;" but we are of the opinion that the contention is untenable. This precise question was raised in

State v. Sexton, 10 S. D. 127, 72 N. W. 84, and in Hurlbut v. Leper, 12 S. D. 321, 81 N. W. 631, and held that the qualifying words, "has willfully testified falsely," take the instruction out of the rule requiring it to contain the clause, "unless such testimony be corroborated by other credible evidence or by facts and circumstances proved on the trial." Defendant further claims that this instruction was erroneous because not based on any evidence; that there is no evidence in the record where any witness has willfully testified falsely to any material fact. But we are of the opinion that this contention is untenable in the face of the record that defendant testified his mind was a blank when he shot Ogresto, and, besides, there is other ample testimony to warrant such instruction.

The appellant further complains of an instruction that : "A 'reasonable doubt' is a doubt for which a reason can be given; it is a substantial doubt based on the evidence or want of evidence in the case, and not a bare possibility of the defendant's innocence; it is such a doubt as would cause a reasonably prudent man to pause and hesitate before acting in the highest affairs of life." In State v. Grant, 20 S. D. 168, 105 N. W. 97, and State v. Serenson, 7 S. D. 277, 64 N. W. 130, substantially the same instruction was held proper. Careful consideration of the whole instructions, and objections thereto, fails to reveal reversible error therein. As a whole, the instructions of the learned trial court were very fair and favorable to defendant.

One of the grounds urged by defendant for a new trial is newly discovered evidence. On the motion for new trial the affidavit of one Jakovich was presented, in which he says that he was in the saloon of defendant on the night of May 2, 1908, and saw the difficulty that took place between defendant and Ogresto; that, immediately prior to the firing of the shot, Ogresto was in the act of making an assault upon the defendant, and was quite close to him, and was in an angry mood. But this character of testimony is cumulative. Batinovich, the business partner of defendant, was present and saw the same transaction, and testified to what took place immediately prior to the shooting. The record shows that Jack Komar, Mitchel Droboc, Chris. Zameum, Obren

Nincovich, Stampa Oberien, and Paul Mattich were each and all in the saloon at the time of the shooting, and all have testified as to what occurred immediately prior to the firing of the shot, and further testimony on that point would be cumulative. Again, the affidavit is insufficient in this, that it nowhere states what Ogresto was doing. True, it says he was in the act of making an assault on defendant; but what were the facts? Was Ogresto striking at him with his fist, or with a club, or was he pointing a loaded revolver at him? What were the facts from which the court or jury might infer or draw the conclusion that Ogresto was in the act of making an assault on defendant? Motions for a new trial on the ground of newly discovered evidence are regarded by most courts with more or less suspicion, and in all cases like this, where it appears that the business partner of defendant, who appears very friendly to his cause, was present and saw the transaction and endeavored to take the revolver from defendant just prior to the firing of the fatal shot, does not testify to or mention the fact of any assault having been made or attempted by deceased, leaves this alleged newly discovered evidence open to much suspicion. We are of the opinion that the trial court did not abuse its discretion in denying the motion for new trial.

Finding no error in the record, the judgment of the circuit court is affirmed.