STATE OF MINNESOTA *vs.* TIMOTHY O'NEIL.

Argued June 22, 1894.   Affirmed Aug. 16, 1894.

No. 8583.

**Homicide in self-defense, Facts stated negative the defense.**
    Taking the evidence adduced upon the trial of this case, which resulted in a conviction for the crime of murder in the first degree, in the most favorable light for defendant, it is *held* that the court below was fully warranted in that part of its charge to the jury wherein it stated that certain preliminary acts of defendant showed conclusively that the homicide was not committed in self-defense, either real or imaginary.

Appeal by defendant, James O'Neil, from an order of the District Court of Sibley County, *Francis Cadwell*, J., denying his motion for a new trial.

He was indicted for and convicted of the crime of murder in the first degree.   The court certified of record its opinion that by reason of exceptional circumstances the case was not one in which the penalty of death should be imposed, and sentenced defendant to imprisonment for life.

The defendant and Michael Collins, deceased, had for many years lived on adjoining farms in the town of Faxon in Sibley County, and there had long been a dispute between them as to the location of the boundary line.   On September 25, 1891, the defendant and his brother dug a ditch or well twelve feet long, four feet wide and six feet deep on the strip of land in dispute to get the leaching water in the soil, for the steam threshing machine he expected in a few days to thresh his grain.   The testimony of surveyors given at the trial established the fact that this well was on defendant's farm close to the division line.   The next day at half past one o'clock in the afternoon Collins,

his two sons, and hired man came to throw back the earth into this well then half full of water. Defendant saw them and went alone from his house twenty four rods distant down to the well with shot gun, pistol and large knife to resist, and the tragedy occurred as narrated in the opinion. He moved for a new trial and being denied appeals.

*W. W. Erwin,* and *Walter A. Shoemaker,* for appellant, cited *People* v. *Gastro,* 75 Mich. 127; *People* v. *Batchelder,* 27 Cal. 65.

*H. W. Childs,* Attorney General, and *George B. Edgerton,* his assistant, for the state cited *State* v. *Rheams,* 34 Minn. 18; *State* v. *Sorenson,* 32 Minn. 118; *State* v. *Hoyt,* 13 Minn. 132.

COLLINS, J. Defendant was convicted of the crime of murder in the first degree, and appeals from an order denying a new trial. The unfortunate affray, which terminated in the almost instant killing of one man, and has caused the sentence of imprisonment for life to be passed upon another, grew out of a dispute over the location of the boundary line between the farm of the deceased and that of defendant. Stating the facts, as they appeared in evidence, most favorable to defendant, they were as follows: He and a brother had dug a ditch on the land in dispute, about 12 feet long, 4 feet wide, and 6 feet deep. From the evidence on the trial it appeared that this ditch was actually upon defendant's land, although the deceased, Michael Collins, believed it to be on his side of the line. On the day of the homicide the deceased, his two sons, Patrick and Thomas, and a hired man named Anderly, went to the ditch, which was about 20 rods from defendant's house, for the purpose of filling it up. The defendant, returning from another farm, saw them at work. He then went to the garret of his house, obtained a double-barreled shotgun and a revolver. Passing through his barn, he picked up a large knife used for butchering hogs, and proceeded rapidly towards the ditch. When seen by the four men, Anderly retreated behind a fence. Thomas stood still on the bank of the ditch, with a shovel in his hand. Patrick moved a few steps to the south, with a fork in his hand; while the father, Michael, holding a spade, moved a short distance to the west. While the testimony is a little confusing as

to the relative positions of these persons and defendant as he approached the ditch from the southwest and Michael and Patrick Collins stepped away, it clearly appears that neither of the four moved towards defendant.    He halted about two rods from the men, raised the muzzle of his gun, lowered it, telling the latter at the same time to go away.    At this Thomas Collins lifted his hand, and said, "Come on, we are ready for you."    The defendant immediately aimed his gun at Michael Collins, and fired the shot which killed him.    Instantly turning upon Patrick, he discharged the contents of the other barrel, and also emptied three barrels of the revolver in an effort to shoot him down, before he was seized and thrown to the ground by Patrick and Thomas, both of whom he cut with the knife after they seized him.    At no time until after defendant discharged both barrels of the gun were either of the men within two rods of him, and upon the trial he made no claim that either threatened to use, or attempted to improperly use, the farming implements with which they had been at work.    He did testify that Patrick held the fork as if he was going to use it, but this slight circumstance loses all force when we observe that defendant first fired upon Michael, who, so far as is shown by the evidence, was quietly standing over two rods away, and, according to defendant's version of the affair, had not spoken at all.

The counsel for defendant make but one assignment of error, and that as to a portion of the charge to the jury.    Evidently counsel claimed, among other things, that the shooting was done in self-defense; and on this the charge of the learned trial court was clear and explicit.    The particular paragraph to which counsel excepted, and which is to be read in connection with the balance of the charge, was as follows:

"When the party has not retreated from or attempted to shun the combat, but has unnecessarily entered into it, his act is not one of self-defense.    The defendant, by taking his gun, and following after the deceased, without any previous provocation, such as the law will recognize as a provocation for the use of a deadly weapon, shows conclusively that the homicide was not committed in self-defense, either real or imaginary."

We quite agree with counsel in their proposition that when the question of self-defense is involved it is particularly important that

a court should refrain from any invasion of the rights of a jury. But, taking the evidence of the defendant himself, which was certainly as favorable as any given in his behalf, it was conspicuously insufficient to establish a legal justification for the killing on the ground of self-defense, and, this being so, it was within the province of the court— it was its duty—to so state in its charge. We need not cite authorities on this point. The defendant's testimony clearly discloses that he was the active aggressor, and had no excuse whatever for taking deadly weapons to the scene of the tragedy. He had no right to arm himself to resist a mere civil trespass, or for the purpose of driving the invaders from his land. Their invasion of it was not such a wrong as would provoke any person not wholly regardless of human life to use a deadly weapon, nor was it such as the law will recognize as sufficient to even reduce the killing to a lower crime than that of murder. See *State* v. *Smith*, 56 Minn. 78, (57 N. W. 325.)

Even admitting that appearances warranted defendant in believing—as he testified he did believe, although there was no testimony which would justify any reasonable man in such belief—that the son Patrick was endeavoring, fork in hand, to get in his rear, we fail to see how it can be said that such appearances influenced or induced defendant to suppose that his own personal safety required that he shoot down the father, Michael, then standing quietly and silently two rods away in another direction, without weapons, save as the spade may be called one, or excused him in the slightest for such shooting. There is nothing in the Penal Code, § 192, which justifies defendant's conduct when arming himself, or when he reached the scene, as his counsel seem to think. The lower court was fully warranted in charging that defendant's acts showed conclusively that the homicide was not committed in self-defense, real or imaginary, and that was the charge taken as a whole.

Order affirmed.

Buck, J., absent, sick, took no part.

(Opinion published 59 N. W. 1101.)