STATE v. LOUIS CORRIVAU.[1]

July 22, 1904.

Nos. 13,718—(4).

**Commutation of Death Sentence—Subsequent Appeal from Conviction.**

 The defendant was found guilty of murder in the first degree, and judgment was entered adjudging that he be executed. He applied for, received, and accepted a commutation of his sentence to life imprisonment, and the board of pardons issued its warrant to carry the commutation into effect, and he is now serving such life sentence. Thereafter he appealed from the original judgment. Query: Has he waived his right to appeal?

**Self-Defense.**

 It was not error, in view of the uncontradicted evidence, for the trial court to charge the jury that the homicide was neither excusable nor justifiable, and thereby exclude from the consideration of the jury the question of self-defense.

**Intoxication.**

 Nor was it error to instruct the jury that the burden was on the defendant to establish his claim that he was so intoxicated at the time of the killing that he was incapable of forming any intent. Nor was it error to instruct them that an act committed by a person in a state of voluntary intoxication was not less criminal by reason of such condition, but that, if the defendant was so drunk at the time of the killing as to be incapable of entertaining a premeditated design to effect the death of the deceased, he could not be convicted of murder in the first degree; that if he was incapable, by reason of intoxication, of entertaining any design to kill, he could not be convicted of murder in the second degree, and that such a finding would reduce the offense to manslaughter in the first degree.

 Defendant was convicted in the district court for Lake county, Cant, J., of murder in the first degree and sentenced to death. Subsequently his sentence was commuted by the board of pardons to life imprisonment, which defendant accepted. Thereafter he appealed from the judgment of conviction. Affirmed.

[1] Reported in 100 N. W. 638.

*Alexander Marshall* and *Warner E. Whipple,* for appellant.

*W. J. Donahower,* Attorney General, *C. W. Somerby,* Assistant Attorney General, and *M. O. Aubolee,* County Attorney, for the State.

START, C. J.[2]

The defendant, on December 20, 1902, was indicted, tried, and convicted in the district court of the county of Lake of murder in the first degree, he having shot and killed James Alain. Formal judgment imposing the death penalty was entered on February 2, 1903. On April 28, 1903, the State Board of Pardons, upon his application, commuted his sentence to imprisonment in the State Prison at Stillwater at hard labor for the full term of his natural life. He accepted the commutation, and the board issued its warrant to carry such commutation into effect. He is now serving such life sentence. Afterwards, and on July 15, 1903, he appealed from the judgment to this court.

The attorney general on the argument moved the court to dismiss the appeal on the ground that the defendant, by seeking, obtaining, and accepting a commutation of the judgment of death to life imprisonment, thereby waived his right of appeal from the original judgment; and, further, that there is now no such judgment as that from which it was attempted to appeal. The claim of the state, briefly stated, is to the effect that the defendant now stands precisely in the same legal condition as if he had originally been permitted to plead guilty to murder in the second degree, and had been sentenced to imprisonment for life; and, further, that by asking the pardon board to modify his sentence of death to life imprisonment, he impliedly admitted his guilt, and appealed to the board to mitigate his punishment; hence the commutation which he prayed for and accepted was, in legal effect, an affirmance of the original judgment as modified by the commutation. The following authorities, with others, were cited in support of the claim: 24 Am. & Eng. Enc. (2d Ed.) 597; Ex parte Collins, 94 Mo. 22, 6 S. W. 345; Manlove v. State, 153 Ind. 80, 53 N. E. 385; People v. Marsh, 125 Mich. 410, 84 N. W. 472. The court is not in a position to decide the motion to dismiss the appeal on its merits, for the reason that Justice DOUGLAS, having been of counsel, took no part in the hearing of the appeal, and the four remaining justices are equally

2 Douglas, J., took no part.

divided in opinion on the merits of the motion to dismiss.    It follows that the motion to dismiss the appeal cannot be granted, as there is not a majority of the members of the court in favor of such action.

This brings us to the merits of the appeal.    All of the assignments of error relate to the instructions of the trial court to the jury.    There is no question made as to the sufficiency of the evidence to support the verdict, and no complaint of any ruling of the court on the trial.    The defendant assigns fifty five errors in the charge of the court to the jury.

The facts, stating them as favorably for the defendant as the evidence will warrant, are, briefly, these:    The defendant was a woodsman employed in a lumber camp, and on the afternoon of October 11, 1902, he came from the camp to the town of Knife River, in the county of Lake.    He had a time check for a small amount, which he cashed at a saloon, and then went from there to another saloon, where later the shooting occurred, and in which the man killed, James Alain, was employed as barkeeper.    After several drinks with the deceased and others present, the defendant's pipe was dropped or thrown upon the bar or floor behind it.    In an attempt to find it he went behind the bar, and was endeavoring to tear down or remove a pile of barrels or kegs piled there, and was compelled to desist from so doing by the deceased, who forcibly ejected him from behind the counter, and threw him down, and held him powerless upon the floor of the saloon for a few moments.    The defendant was greatly enraged at this, and challenged the deceased to fight.    Peace was, however, restored, and the drinking resumed for some time, when defendant found fault with the size of the glass offered him by deceased, and pushed it across the bar against a brass faucet and broke it, spilling the contents on the counter;    whereupon the deceased came out from behind the bar, opened, and fastened back the outside door, and returned to defendant, and bodily threw or kicked him out of the room and building.    The defendant was at this time drunk.    Threats were made by defendant after he was thrown from the saloon, and he proceeded to a saloon across the railroad track, where earlier in the day he had cashed his time check, secured and loaded his gun, went back to the saloon from which he was thrown, stating on the way to two witnesses, or saying in their presence, "Let me see him; I will fix him."    One of the witnesses who heard these or similar threats ran on ahead of the defendant and in-

formed Alain of the threat, and of the fact that the defendant was armed, and coming towards the saloon. The lights in the saloon were burning at this time, and shone out through the windows in front upon the porch or walk in front of the building, through which the defendant's approach was observed by those within, and through which he peered after stepping upon the porch or walk of the saloon. As he did this, the deceased came out of the west or side door of the saloon, and walked rapidly towards him, with his coat off and his hands at his sides. He was not armed, and there was nothing in his hands. When he was within about six feet of the defendant, the latter saw him, and said, "There he is now," raised his gun, and fired, striking the deceased in the abdomen, from the effect of which he died shortly before midnight.

No claim was made on the trial that the defendant did not kill Alain, but the defense was that the defendant at the time of the shooting was so completely intoxicated that he was not only incapable of forming any intent whatever, but was so drunk that he had no recollection of what took place after the first quarrel in the saloon, and that he did not know of the killing of Alain until he was told in jail the next morning. The counsel for the defendant in this court claim that the defense of self-defense was also made on the trial, and that the evidence was sufficient to raise an issue for the jury as to such defense. The record does not justify the claim. Such a defense would have been inconsistent with the defense of oblivious intoxication, and the record does not show that it was urged. Again, there was no evidence tending to show that the shooting was done in self-defense, within the legal meaning of the term.

So many of the fifty five exceptions to the charge of the court are so manifestly without merit that no attempt will be made to consider them in detail. The court charged the jury that:

> The killing in this case was neither justifiable nor excusable within the meaning of our law. To warrant a verdict of "Guilty as charged in the indictment," you must, therefore, be satisfied by the evidence * * * beyond a reasonable doubt that defendant killed said James Alain, and that such act was perpetrated with a premeditated design to effect the death of the de-

ceased. It is the premeditated design which is the distinguishing characteristic of murder in the first degree.

The defendant's counsel urges that the giving of this instruction was reversible error, for the reasons:

> (1) It assumed the fact of the killing and the fact of the death of James Alain. (2) It states a presumption of guilt from the fact of such killing, which does not arise when the circumstances of the killing appear in the evidence. (3) It furthermore held this presumption one of law, instead of one of fact. (4) It eliminated from the consideration of the jury all affirmative evidence of the defendant in justification of the homicide. (5) It nullified the presumption of innocence, and deprived the defendant of the benefit of the theory of reasonable doubt. (6) It ruled, as a matter of law, that upon the facts there was no necessity of a resort to self-defense; that the fears of defendant were not reasonable—instead of submitting that question to the jury. (7) It was tantamount to a direction of a verdict of guilty, withdrawing from the jury the ultimate fact in issue—that of guilt or innocence.

Counsel support their objections to the charge with an able and exhaustive argument, which, considered abstractly, is meritorious, but, considered concretely, it fails to prove that there was any reversible error in the instruction. There is not a suggestion in the evidence that the homicide was excusable.

> Homicide is excusable when committed by accident or misfortune in doing any lawful act by lawful means with ordinary caution and without any unlawful intent. G. S. 1894, § 6459.

Homicide, so far as relevant to this case, is justifiable when committed either

> (1) In the lawful defense of the slayer, or of his or her husband, wife, parent, child, brother, sister, master or servant, when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury to the slayer, or to any such person, and there

is imminent danger of such design being accomplished; or (2) in the actual resistance of an attempt to commit a felony upon the slayer in his presence or upon or in a dwelling or other place of abode in which he is.   G. S. 1894, § 6461.

It is true that the instruction complained of assumes the fact of the killing of Alain by the defendant, and the fact of his death—matters put in issue by the plea of not guilty. But in fact there was no issue as to such matters on the trial. The uncontradicted evidence conclusively showed that Alain was dead, and that he was killed by the defendant. In the course of his instructions the trial judge said to the jury:

> Since it is practically admitted that James Alain is dead, and that he was killed by a ball discharged from a rifle then held by the defendant (and if I am technically or otherwise in error about this, counsel for defendant will call it to my attention), a very convenient line of procedure would be for you to first consider this defense.

No suggestion was made by counsel that the judge was in error. It is very clear that the defendant was in no manner prejudiced by the court assuming that there was in fact no issue as to the death of Alain, or as to who killed him.

It is also true that the instructions complained of excluded the question whether the defendant killed Alain in self-defense. There being no evidence which would legally justify the jury in finding the defendant not guilty on the ground that he acted in self-defense, it was not error for the court to decline to submit the question to the jury. On the contrary, the evidence was so conclusive on the question that it would not have been error if the court had expressly instructed the jury that the killing was not done in self-defense. In the case of State v. Rheams, 34 Minn. 18, 24 N. W. 302, the trial judge instructed the jury, in effect, that the case was not one of justifiable homicide, and declined to submit to them the question whether the defendant acted in self-defense. This court on appeal held that it was the duty of the court to declare the law in criminal as well as in civil cases, and that the charge of the trial court was right. In the case of State v. Hanley, 34 Minn. 430, 26 N. W. 397, the trial court instructed the jury that

the evidence would not justify a conviction of the defendant of any degree of homicide other than that of murder in the first degree. The question of insanity as a defense was submitted. The instruction was held correct. Again, it was held in the case of State v. Smith, 56 Minn. 78, 57 N. W. 325, that the ruling of the trial court that there was no evidence reasonably tending to reduce the crime of murder in one of its three degrees to manslaughter, and its refusal to charge the jury as to the degrees of manslaughter, were correct. It was also held in the case of State v. O'Neil, 58 Minn. 478, 59 .N. W. 1101, that it was not error, where the evidence was conclusive on the question, to instruct the jury that the killing was not done in self-defense.

The only other assignments of error meriting special consideration relate to the instructions of the court as to the defendant's alleged defense of intoxication. The court instructed the jury, in effect, that the burden of establishing such defense was upon the defendant; that an act committed by a person in a state of voluntary intoxication was not less criminal by reason of such condition, but that such intoxication was to be taken into consideration in all cases where the intent with which the act was done was an essential element of the alleged crime, or any degree thereof; that, if the defendant was so intoxicated at the time of the killing as to be incapable of entertaining a premeditated design to effect the death of the deceased, he could not be convicted of murder in the first degree; that if he was so intoxicated that he was incapable of entertaining any design to kill the deceased, he could not be convicted of murder in the second degree, and that such a finding would reduce the offense to manslaughter in the first degree, and the verdict of the jury should be accordingly.

The burden of establishing the defense of intoxication or insanity is upon the defendant. State v. Grear, 29 Minn. 221, 13 N. W. 140.

> A person is presumed to be responsible for his acts. The burden of proving that he is irresponsible is upon the accused person except as otherwise prescribed in this code. G. S. 1894, § 6299.

The instructions as to the effect of the alleged intoxication of the defendant were correct. They were in strict accordance with the provisions of our Penal Code (G. S. 1894, § 6304), which provide:

No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition, but whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute a particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time in determining the purpose, motive or intent with which he committed the act.

It is further urged that the instructions limited the jury to one of three verdicts; that is, guilty of murder in the first degree, or murder in the second degree, or manslaughter in the first degree. Such was the practical effect of the instructions, but nevertheless they were correct, for upon the undisputed evidence a verdict of guilty of manslaughter in the first degree was the most favorable finding for the defendant that it was legally possible for the jury to make. It was, therefore, the duty of the trial court to instruct the jury as to the law as in civil cases. In jurisdictions where, in criminal cases, the jury are the judges of both the law and the facts, instructions similar to those here complained of have been held to be erroneous. The charge of the learned trial judge in this case, read as a whole, in connection with the evidence was a fair and correct statement of the law applicable to this particular case.

Judgment affirmed.