## STATE v. LIND DAMUTH.[1]

### December 8, 1916.

### Nos. 20,081—(13).

**Criminal law — charge to jury that certain facts were "admitted."**

1. The defendant was not prejudiced by the charge of the court that certain facts were "admitted."

**Mayhem — submission to jury whether defendant committed assault in third degree.**

2. The court did not err in refusing to submit to the jury the question of defendant's guilt of assault in the third degree.

1 Reported in 160 N. W. 196.

Defendant was indicted by the grand jury, jointly with three others, for the crime of mayhem, tried in the district court for Meeker county, and upon his demand was granted a separate trial before Daly, J., and a jury which returned a verdict of guilty of assault in the second degree. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*Alva R. Hunt, H. H. Bonniwell* and *C. G. Odquist,* for appellant.

*Lyndon A. Smith,* Attorney General, *James E. Markham,* Assistant Attorney General, and *Raymond H. Dart,* County Attorney, for respondent.

SCHALLER, J.

The defendant was indicted with three others, charged with the crime of mayhem. His separate trial in the district court of Meeker county resulted in a verdict of guilty of an assault in the second degree. From the order denying his motion for a new trial, defendant appeals.

On the evening of February 18, 1916, defendant assaulted Frank Nagel and struck him several blows, seriously injuring Nagel and destroying his right eye. The assault was made without a weapon, the injury to the eye being the result of a blow from defendant's naked fist.

Two principal contentions are made by appellant: (1) Error in a certain instruction to the jury; (2) that the court erroneously refused to charge the jury that they might find the defendant guilty of assault in the third degree.

1. The charge was clear, full and fair. The jury were informed under what state of facts they could find the defendant guilty as charged; they were also instructed that if they failed to find certain facts they might convict of assault in the second degree. They were positively instructed that if they found Nagel to have been the aggressor they must acquit. They were plainly told that, before they could find Lind Damuth guilty, they must find that the state had proved beyond a reasonable doubt that Lind Damuth committed the assault, that he commenced the fight.

The instruction complained of was in the opening part of the charge. The court had warned the jury that they were the sole judges of the facts; that they should be guided by the evidence as they remembered it; that they were not to take the version or theory of either court or coun-

sel nor guess at what the court might think of the evidence, and that the court had no right to an opinion and no right to express an opinion, a thing entirely within the province of the jury.

The jury were then instructed as to the presumption of innocence and as to the burden of proof and the weight of evidence necessary to a conviction. Thereafter the court used the language of which defendant complains:

"It is admitted that there was a fight out there in Kingston on the evening of the eighteenth of February. It is admitted that in that fight the witness for the state, Mr. Nagel, lost his eye. It is admitted that he lost his eye by reason of a blow received from Lind Damuth."

The statement is perhaps unfortunately worded. The course of the trial and the conduct and attitude of counsel for both prosecution and defense lead to the conclusion that there was no real controversy regarding the facts recited by the court and that they were practically undisputed, or as the court stated, "admitted." The record does not contain a formal admission that there was a fight at Kingston, that Nagel lost his eye in that fight, and that he lost it by reason of a blow received from defendant.

Nevertheless the evidence justifies the conclusion that such are the facts. Indeed, no other rational conclusion could be reached. There was no evidence that any person other than defendant struck Nagel in the face. Lind Damuth testified positively that his brother Fred, who was the only other person present at the fight, did not strike a blow, and that he himself struck Nagel twice, once on the mouth, the second time in the face somewhere. There is no evidence in the case tending in the slightest degree to show that Nagel lost his eye from any other cause than the blow received in the fight. Under these circumstances we cannot agree with defendant that the instruction was erroneous. It is the duty of the court to declare the law in criminal as well as in civil cases. State v. Rheams, 34 Minn. 18, 24 N. W. 302. Where the evidence is conclusive on a question and would not legally justify the jury in finding otherwise, the court may instruct the jury to that effect: State v. Corrivau, 93 Minn. 38, 100 N. W. 638; and where the evidence proving a fact is such that a jury would not be legally justified in finding otherwise, the court may instruct the jury that the fact exists. State v. Corrivau, supra; State v. Towers, 106

Minn. 105, 118 N. W. 361; State v. Potoniec, 117 Minn. 80, 134 N. W. 305.

2. A defendant in a criminal prosecution may be convicted of a lesser degree of the offense charged in the indictment. So where, as in the instant case, the indictment charges mayhem, there may be a conviction for assault in the second degree, or possibly in the third degree, for an assault and battery is necessarily included in the commission of the crime of maiming. State v. Wondra, 114 Minn. 457, 131 N. W. 496, Ann. Cas. 1912C, 667.

But it does not necessarily follow that the court must, in every case of mayhem, instruct the jury that they may convict of assault in the second or third degree. The instructions must be based on the evidence. Where the evidence does not reasonably tend to reduce the crime charged to a lesser degree, the court may properly decline a request to charge as to such lesser degree. State v. Smith, 56 Minn. 78, 57 N. W. 325; State v. Corrivau, supra; State v. Towers, supra.

In the instant case the court instructed the jury on the question of the intent so far as it related to the crime of mayhem. It also charged that if the assault was committed, but without the intent to maim, the jury might find the defendant guilty of assault in the second degree, and defined the same. G. S. 1913, § 8632, subd. 3.

The real defense interposed was self-defense. The court submitted that issue very fairly. He told the jury:

"Now if you are to believe the story of the witness for the state, Mr. Nagel, as to that assault, then, of course, you would have to believe that Lind Damuth committed the assault. If you believe the story of Lind Damuth and the witnesses for the defendant, or if there should be a reasonable doubt in your minds, after hearing the evidence, as to whether Lind Damuth commenced this assault or not, you would be obliged to acquit."

The issue for the jury under this instruction was whether defendant, in striking the blow which put out Nagel's eye, had acted wilfully and wrongfully.

It was not necessary to a conviction for assault in the second degree that the defendant in striking the blow should have the specific intent to put out Nagel's eye. It is sufficient, under the language of the statute, if

he wilfully and wrongfully struck the blow. "It would be a mistake to suppose that in order that an act may amount to a crime the offender must intend to commit the crime to which his act amounts, but he must in all cases intend to do the act which constitutes the crime." 2 Stephens, Hist. Crim. Law, 112, quoted in State v. Quackenbush, 98 Minn. 515, 521, 108 N. W. 953.

So it was sufficient to a conviction that Lind Damuth wrongfully intended to strike the blow which blinded Nagel, although he had no intent to put out his eye. The word "wilfully" means "designedly" or "intentionally." State v. Lehman, 131 Minn. 427, 155 N. W. 399. If the act was intentionally done, the defendant could be convicted of assault in the second degree, though he did not intend all the consequences of the act. If Damuth was the aggressor, the act was wilful and wrongful; if he was not the aggressor, he was, under the evidence and the law as laid down by the court, guilty if no crime.

It is argued that the affray in which Nagel was injured was only a fist fight, that defendant did not intend to inflict grievous bodily harm, and that consequently he was guilty of assault in the third degree only.

But it cannot be conceded that grievous bodily harm can be inflicted only by means of a weapon. Men have been killed with the bare hands or by blows from the naked fist. Grievous bodily harm may result from an assault although the assailant be unarmed. Recognizing this, the statute (G. S. 1913, § 8632, subd. 3), punishes as for assault in the second degree, one who wilfully and wrongfully inflicts bodily harm, even without a weapon. The grievous bodily harm, resulting from the assault and battery in this case, justified the instruction that the jury might convict of assault in the second degree. The evidence also justified the court in charging the jury that they could convict defendant of the offense charged, or of assault in the second degree, or find him not guilty. State v. Ronk, 91 Minn. 419, 98 N. W. 334; State v. Potoniec, supra.

Order affirmed.