STATE v. CHARLES LEE SPANN.

182 N. W. (2d) 873.

December 31, 1970—No. 41999.

*C. Paul Jones,* State Public Defender, and *Roberta K. Levy,* Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, *James M. Kelley,* Assistant Attorney General, *William B. Randall,* County Attorney, and *Steven C. DeCoster,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Rogosheske, Peterson, Kelly, and Rosengren, JJ.

PER CURIAM.

Appellant, upon a negotiated plea of guilty to manslaughter in the second degree, a lesser degree of the crime of murder in the second degree for which he was indicted, was sentenced to imprisonment for 7 years.[1] By this direct appeal from the judgment, he seeks to vacate his plea of guilty. Appellant claims that the court should have refused to accept his guilty plea and that he was denied adequate counsel.

Preceding the plea, plea bargaining negotiations were held between the prosecutor and appellant's court-appointed counsel which lasted most of the day. In addition to the reduced charge, it was understood that the sentence would commence as of the time of appellant's arrest and that the trial judge would make a recommendation of leniency to the parole board. After discussing the possible consequences with his wife and mother, appellant decided to plead guilty to the reduced charge.

The record shows that appellant twice acknowledged that he was pleased with his attorney. Inquiry was made as to whether appellant understood his rights; namely, his right to a jury trial, that all 12 jurors would have to agree that he was guilty, the meaning of presumption of innocence which would follow appellant in his trial until overcome by proof beyond a reasonable doubt, and that appellant did not have to testify and the prosecutor could not comment on his failure to testify.

Appellant's plea may have been based on the expectation on his part that even though he pled not guilty and was tried before a jury, he would still be convicted. The following facts related by appellant to the lower court, which possibly could have been refuted by evidence presented by the state, form the basis for appellant's claim that he did not admit all of the elements of manslaughter in the second degree and that the defense of self-defense could have been raised had he gone to trial.

Outside a bar, decedent said something to appellant. Decedent swung at appellant several times with a knife. Appellant asked if decedent wanted to fight fair and square. Decedent said yes and gave his knife to a man named "Willie." About this time some police pulled up, and decedent and Willie walked away. Appellant then went into the bar. He talked to two girls there and then they went outside and to the rear of the bar. While he was telling them what had happened, decedent appeared and said something "real smart." Appellant returned to the

---

[1] The authorized punishment for murder in the second degree is not to exceed 40 years and for manslaughter in the second degree, not to exceed 7 years. Minn. St. 609.19 and 609.205.

inside of the bar, as did the others. Willie threw appellant against the bar and decedent threw a punch which reopened a cut on appellant's jaw. Appellant left the bar but returned to get his coke. Then decedent, with his hand in his pocket, walked toward appellant with "long steps." Appellant testified that he asked one of the girls for a knife and continued, "[S]o I got it out of her hand and this guy walking towards me so I, I interrupted him because, you know, if I turn around and ran he probably would have stabbed me in my back." Decedent swung at appellant who, while off balance, swung with his knife and cut decedent's jaw. Decedent hit appellant with a chair and a bouncer intervened, after which appellant left the bar.

Before a plea is accepted, the lower court should make an inquiry that will satisfy it that there is a factual basis for the plea. Second-degree manslaughter requires that a person must be grossly negligent while consciously creating an unreasonable risk with a chance of causing death or great bodily harm to another.[2]

In State v. Beilke, 267 Minn. 526, 534, 127 N. W. (2d) 516, 521, this court stated:

"In State v. Bolsinger, 221 Minn. 154, 21 N. W. (2d) 480, this court thoroughly discussed the meaning of culpable negligence. It is more than ordinary negligence. It is more than gross negligence. It is gross negligence coupled with the element of recklessness. It is intentional conduct which the actor may not intend to be harmful but which an ordinary and reasonably prudent man would recognize as involving a strong probability of injury to others."

The appellant cut decedent and there is no evidence that decedent at that time had a knife. The trial court asked appellant if he understood that a knife was a dangerous weapon. Appellant replied: "This is the reason I took this knife. I knew someone could get hurt, but this is the reason I took this knife because I figured if I have a knife that I wouldn't." Knowing the likelihood of injury to decedent, appellant

---

[2] Minn. St. 609.205, provides in part: "Whoever causes the death of another by any of the following means is guilty of manslaughter in the second degree and may be sentenced to imprisonment for not more than seven years or to payment of a fine of not more than $7,000, or both:

"(1) By his culpable negligence whereby he creates an unreasonable risk, and consciously takes chances of causing death or great bodily harm to another."

thus created an unreasonable risk which resulted in the death of decedent.

The testimony of appellant suggests the possibility of self-defense as a defense. Appellant was well aware of this possibility, as he testified that he had told a friend what had happened at the bar and that the friend "convinced me I should go down and give myself up because he said it was self-defense."

In State v. Johnson, 277 Minn. 368, 373, 152 N. W. (2d) 529, 532, it was stated:

"It is a general rule that the legal excuse of self-defense is available only to those who act honestly and in good faith. The rule requires (1) the absence of aggression or provocation on the part of the slayer; (2) the actual and honest belief of the slayer that he was in imminent danger of death, great bodily harm, or some felony and it was necessary to take the action he did; (3) the existence of reasonable grounds for such belief; and (4) the duty of the slayer to retreat or avoid the danger if reasonably possible."

It is clear that just before he stabbed decedent appellant did not believe he was in imminent danger of death or great bodily harm because he did not see a weapon in decedent's hand and knew decedent had given his knife to a friend earlier. Appellant not only made no attempt to retreat at the time of the stabbing, but had reentered the bar after two prior incidents which should have warned him that there would be further trouble.

Appellant's claim that he did not receive adequate representation has no support in the record. It is evident from the transcript that appellant was informed of his fundamental rights as a defendant before pleading guilty and that appellant was satisfied with his court-appointed counsel.

"* * * [T]he bare assertion that the attorney for an accused is not competent is not of juridical significance. * * * In the absence of any affirmative showing to the contrary, there is a controlling presumption that court-appointed counsel in a criminal case not only has consulted with his client * * * but also has advised him in good faith of his rights in entering a plea of guilty or not guilty." State ex rel. Moriarty v. Tahash, 261 Minn. 426, 429, 112 N. W. (2d) 816, 819.

Affirmed.