**George Edward HAUWILLER,
Petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. 50136.**

Supreme Court of Minnesota.

Aug. 8, 1980.

**642**

C. Paul Jones, Public Defender, and Lawrence Hammerling, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas W. Foley, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

ROGOSHESKE, Justice.

Petitioner, who was 17 years old at the time of the offense, was certified by the juvenile court for prosecution as an adult and was tried in district court in 1977 on charges of second- and third-degree murder (*i. e.*, intentional homicide and felony murder), Minn.Stat. §§ 609.19 and 609.195(2) (1976). The trial court also submitted one form of first-degree manslaughter (manslaughter during commission of crime), Minn.Stat. § 609.20(2) (1976). The jury found petitioner not guilty of second-degree murder but guilty of third-degree murder. Petitioner, who is serving a 0- to 20-year term in prison, petitioned for postconviction relief in 1979. This appeal is from the order of the district court denying postconviction relief. On this appeal petitioner raises a number of issues, including prejudicial exclusion from in-chambers conference on whether to submit self-defense, error by court in refusing to submit self-defense and in instructing jury that as a matter of law the defense of self-defense did not apply, error of trial counsel in failing to give petitioner adequate information and advice bearing on petitioner's decision whether or not to testify, and abuse of discretion of trial court in sentencing without first ordering a presentence investigation. Holding that petitioner might have testified if his counsel had adequately informed him of relevant facts bearing on his decision whether or not to testify and that trial court erred in its instructions on self-defense, we reverse and remand for a new trial.

On Sunday evening, November 28, 1976, petitioner and some acquaintances were at Wimpy's Submarine Shop and Game Room in St. Paul when petitioner got involved in a verbal dispute with 17-year-old John Morris of White Bear Lake, who, with two friends, Mike Atkinson and Mike Jovanovic, was playing pool. Petitioner and his acquaintances were waiting outside when Morris and his friends came out, and a fist fight erupted between one of petitioner's friends, Frederick Bradshaw, and one of Morris's friends, Mike Atkinson. When Morris tried to assist his friend, petitioner pulled him off and began fighting him. While this second fight was occurring, the focus of the attention of the witnesses con-

tinued to be on the first fight. It was not until that fight was broken up that it was discovered that petitioner had stabbed Morris with a knife, which petitioner had taken from the kitchen of the gameroom, possibly shortly before the fight. Petitioner fled the scene and Morris died a short time later, the autopsy revealing that the cause of death was a single ¾-inch knife wound into the left ventricle, which caused extensive internal bleeding. Petitioner turned himself in to the police early on the morning following the stabbing.

None of the witnesses at petitioner's trial testified as to the circumstances of the fight with Morris, since apparently no one had actually seen what happened. Most of the evidence focused on the events leading to the fight and on petitioner's shock and disbelief at learning that he had killed Morris.

■ Although petitioner notified the state that he intended to claim self-defense and although petitioner's counsel apparently questioned the jurors at voir dire about whether they could fairly apply the law of self-defense, petitioner never testified. His main claim in this proceeding centers on the facts leading to his decision not to testify. From our examination of the record it appears that before the decision was made, petitioner's counsel, out of petitioner's presence, was informed by the trial court that, absent some testimony raising the defense, he was not going to submit self-defense and, indeed, planned to submit an instruction informing the jury that as a matter of law petitioner had not acted in self-defense. Petitioner testified at the postconviction hearing that his counsel never told him about this, and petitioner's counsel testified that she did not recall telling him this. It appears that notwithstanding the fact that petitioner's testimony was crucial to his claim of self-defense, his counsel advised him not to testify but did not advise him that without his testimony the trial court not only would not submit self-defense but would specifically instruct the jury that petitioner had not acted in self-defense.

In *State v. Rosillo*, 281 N.W.2d 877 (Minn. 1979), an appeal from an order denying postconviction relief, we were faced with a claim that petitioner should be granted a new trial because his trial counsel had refused to allow him to testify in his own behalf. Holding that an accused's right to testify was constitutional in dimension and that the decision to testify was ultimately for the accused, not counsel, to make, we stated in our opinion that infraction of the right to testify should never be treated as harmless error. We then went on to state that petitioner did not merely claim that the trial counsel had mistakenly advised him not to testify but that he had refused to permit him to testify. We stated that if this were true, we would grant petitioner a new trial even though we did not believe that petitioner's alibi testimony would have helped him. However, we concluded that the record established that petitioner knew the decision whether or not to testify was a personal decision.

In this case the claim is not that petitioner's counsel refused to permit him to testify but that his counsel failed to adequately inform him of facts relevant to his decision whether or not to testify. Applying the harmless-error-beyond-a-reasonable-doubt test, we conclude that there is a reasonable possibility that petitioner would have testified if he had been fully informed of the facts bearing on his decision whether or not to testify.

■ While it may be that even if petitioner had testified the trial court might properly have refused to submit self-defense, we believe that, if petitioner had testified as he did at the postconviction hearing, the trial court would have been obliged to submit a modified form of instruction on self-defense, using the analytic precision suggested in *State v. Dakota*, 300 Minn. 12, 20–21, 217 N.W.2d 748, 753–54 (1974).

■ Instead of doing this and instead of simply refusing to instruct on self-defense, the trial court gave a so-called no-self-defense instruction, that is, an instruction that as a matter of law petitioner had not

acted in self-defense. Specifically, the court instructed the jury as follows:

> While there is a claim of self-defense in this case, the Court has ruled as a matter of law that there is no evidence in this case from which a jury could conclude that the death of John Morris was justifiable, or caused by an act of self-defense. When I say that I have ruled as a matter of law, what I am simply saying is that the "court has determined that there is no fact issue on the subject of justification or self-defense, for you to decide."
>
> You must not permit this finding by the Court to influence you in determining whether or not the defendant is guilty of any of the crimes charged. You should remember that the burden is still upon the State of Minnesota to prove each and every essential element of the offense or offenses beyond a reasonable doubt before you can return a verdict of guilty.

While the comment to CRIMJIG 7.05 states that "[w]hen the evidence is clearly insufficient to raise the issue of self-defense, the court should so instruct the jury," it appears that the only cases supporting such an instruction are turn-of-the-century cases of this court. *See State v. Corrivau,* 93 Minn. 38, 100 N.W. 638 (1904), *State v. O'Neil,* 58 Minn. 478, 59 N.W. 1101 (1894), and *State v. Rheams,* 34 Minn. 18, 24 N.W. 302 (1885). Expressly overruling those cases, we now hold that such an instruction is improper because of the danger that it might lead the jury to conclude that it is not supposed to consider any of the evidence bearing on the issue of justification, evidence which, while insufficient to raise the defense, arguably might bear on other issues before the jury.

Because we conclude that petitioner might have testified if his counsel had fully informed him of all relevant facts bearing on his decision whether or not to testify and because we conclude that the trial court prejudicially erred in instructing the jury that as a matter of law petitioner had not acted in self-defense, we reverse the order denying postconviction relief, reverse the judgment of conviction, and remand for a new trial on the charge of third-degree murder. The trial court, in addition to sub-

mitting first-degree manslaughter (manslaughter during commission of a crime), Minn.Stat. § 609.20(2) (1976), should also consider the possibility that petitioner's testimony might rationally support a verdict of some other form of manslaughter, particularly second-degree manslaughter (culpable negligence causing death), Minn.Stat. § 609.205(1) (1976). *See State v. Swanson,* 307 Minn. 412, 240 N.W.2d 822 (1976), and *State v. Spann,* 289 Minn. 497, 182 N.W.2d 873 (1970).

Reversed and remanded for new trial.