**STATE of Minnesota, Respondent,**

v.

**Paul M. STEPHANI, Appellant.**

**No. C1–84–1585.**

Court of Appeals of Minnesota.

June 11, 1985.

Review Denied Aug. 20, 1985.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Vernon E. Bergstrom, Chief, Appellate Section, Beverly J. Wolfe, Asst. County Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Michael F. Crommett, Asst. State Public Defender, Minneapolis, for appellant.

Heard, considered and decided by WOZNIAK, P.J., and NIERENGARTEN and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Paul Stephani appeals from his convictions of attempted second degree murder and assault in the second degree. He contends a host of errors either individually or cumulatively denied him a fair trial or improperly enlarged his sentence. We affirm.

### FACTS

On the evening of August 20, 1982, Paul Stephani approached Denise Williams on Hennepin Avenue in Minneapolis, offering her $100 to "have some fun" with him. Denise Williams was a 19 year old woman who had been a prostitute since she was 13 years old. They left in Stephani's car to his St. Paul apartment. Stephani gave her $40, promising to pay her another $60 later. Williams engaged in a sex act with Stephani. She accepted a ride back from Stephani, thinking he would drop her off in downtown Minneapolis. Instead of driving the freeway, Stephani took an indirect route through back roads.

During the drive, Stephani talked of his sexual fantasies. Williams testified she was getting "the creeps." She asked where they were and Stephani told her "Hennepin Avenue." Stephani drove for another two blocks and turned quickly into a dead end parking lot near East Hennepin and Coolidge Avenue in Minneapolis. After stopping, Stephani told her "some ass, grass or gas" and "no one rides for free." Williams tried to get out of the car but he grabbed her left hand and stabbed her in the stomach with a Phillips screwdriver.

Stephani continued stabbing her and Williams fell back in the seat. She felt a pop bottle on the floor of the car, grabbed it and hit him on the head. She tried to hit him in the eye and cut Stephani's cheek, head and hand. Stephani continued to stab her. He screamed in a high-pitched voice that Williams was "just like the rest of some other broads." Williams was scratching, biting and kicking Stephani in an effort to foil his attack.

Stephani then opened the passenger door and they fell out on the pavement, Stephani was on top of her, stabbing, and Williams decided to stop fighting and play dead. She said "I'm dying, I'm dying" and laid there, but Stephani continued stabbing her. Williams screamed for help.

Williams' screams were heard by Douglas Panning, a young man who lived nearby. Panning ran over to the parking lot and saw blood on the pavement and on Stephani and Williams. Panning observed Stephani on top of Williams stabbing her with the screwdriver at least five or six times. Panning heard the screwdriver make a "thud" when it hit bone. He saw Williams had the neck of a broken bottle in her hand. Panning grabbed Stephani's left arm. Stephani jumped up, stared at Panning, and then came at him with the screwdriver, taking a couple of swings at him. Stephani chased Panning to the end of the parking lot and Panning ran home and called the police. Stephani then went to his car and drove off. Panning went back to assist Williams.

When the police came, Williams gave her name as "Mary Gross." She was afraid to give her real name since there was a warrant out for her arrest. Williams had failed to appear at the workhouse in Minneapolis as required by a condition of probationary supervision which was imposed after she was convicted for aggravated for-

gery. Williams did not want to tell police she had engaged in an act of prostitution because of her prior brushes with the law as a prostitute. She told the police she had been hitchhiking to a party in White Bear Lake and Stephani picked her up. Her story was that Stephani pulled over, made advances, and then he began stabbing her after she resisted.

Williams was taken to a hospital where it was observed she had about 15 puncture wounds. The injuries were in her lower right chest, upper right abdomen, and right side of her head; one wound punctured her lung, another punctured her liver. Since she had puncture-type wounds, there was a minimum amount of external bleeding.

Meanwhile, Stephani returned home and requested an ambulance. He told the emergency dispatcher he had "got beat up." Stephani was taken to a hospital for treatment of cuts to his head, hand and cheek, and for an injury to his nose.

A few days later, Williams gave police her true name but continued her false story about hitchhiking. Just before trial, about two years later, Williams told the prosecutor she had lied about hitchhiking, had actually gone to Stephani's apartment the night of the stabbing, and had engaged in an act of prostitution with him.

At trial, Williams testified about the events. She admitted she had lied about hitchhiking. She admitted she lied in the past and often gave false names when arrested. Her history of prostitution arrests and her involvement with petty theft incidents were also brought out on cross-examination.

Stephani was convicted of attempted murder in the second degree, Minn.Stat. §§ 609.19(1), 609.17 (1982), for attacking Williams, and of assault in the second de-

gree, Minn.Stat. § 609.222 (1982), for attacking Panning. He was sentenced to an executed sentence of 203 months for attempted murder, double the presumptive sentence, and to a consecutive executed sentence of 21 months for the assault.

## ISSUES

1. Did the trial court erroneously exclude evidence about specific acts of violent conduct on the part of the victim?

2. Was it error to refuse a requested instruction on self-defense?

3. Was appellant denied a fair trial because of prosecutorial misconduct in closing argument?

4. Was fairness of the trial damaged by comments of two state's witnesses?

5. Was appellant prejudiced by discovery violations?

6. Did the trial court err in refusing to allow appellant's trial counsel to withdraw due to an alleged conflict of interest?

7. Did the trial court commit other errors at trial?

8. Does the record support the trial court's double durational departure and consecutive sentence?

## ANALYSIS

### I.

Appellant challenges the trial court rulings which excluded evidence about specific prior acts of violent conduct on the part of Williams.[1]

The trial court allowed appellant to prove the victim's prior inconsistent statements, her felony convictions, her history of lying,

---

**1.** Appellant made an offer of proof which showed:

A. On August 1, 1980, Denise Williams, along with another juvenile, robbed a woman, after both Williams and her accomplice produced knives and threatened the use of the knives to accomplish the robbery. They then forced the woman into a taxi cab and assaulted her.

B. On July 8, 1981, Denise Williams, along with an accomplice, met a man to whom they offered and he agreed to engage in sex. They then went in his car to a parking lot. As Williams "prepared" to have sex, her accomplice threatened the man with a knife. Williams grabbed his wallet and she and her accomplice fled. Williams was apprehended a short time later.

her history of prostitution arrests, and her involvement with petty theft.

A. Minn.R.Evid. 404(b) provides:

*Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. When excluding the evidence, the trial court stated that there was no present factual basis for admitting it, that the evidence was not clear and convincing, and that it was more prejudicial than helpful. We agree.

■ There was no evidence that Williams attempted to rob appellant. The only purpose the evidence would serve would be to show that Williams acted in conformity with her prior behavior and this is explicitly prohibited under Rule 404(b). The evidence cannot be used when its sole relevance is to show the victim's probable actions at the time of the alleged crime. *State v. Bland,* 337 N.W.2d 378, 383 (Minn.1983), *citing* 2 D. Louisell and C. Mueller, *Federal Evidence,* § 139 (1978). Appellant's attempts to construe his offered evidence as proof of the victim's intent is not convincing. Proof of specific instances of prior misconduct of the victim to show who is the aggressor is not admissible to prove self-defense. *Bland,* 337 N.W.2d at 383.

■ Without necessary foundation showing the victim here was the aggressor, the evidence was inadmissible. *State v. Hawkins,* 260 N.W.2d 150, 158–59 (Minn. 1977); *State v. Southard,* 360 N.W.2d 376, 381 (Minn.Ct.App.) *pet. for rev. denied,* (Minn. Apr. 12, 1985). *See Bland,* 337 N.W.2d at 383. Moreover, because of the wealth of evidence about the victim's past, the defendant was not prejudiced by the decision to exclude the offered evidence.

■ B. Williams did not "open the door" to this evidence by responding to a question of whether she was mad at appellant for tricking her out of $60: "Not somebody as big as him. I mean I couldn't —what could I do about it." Nor did she open the door by admitting that she lied to the police about hitchhiking.

■ C. Williams was thoroughly cross-examined. Appellant's right of confrontation was not violated. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

II.

■ Appellant challenges the trial court's decision to refuse an instruction on self-defense. A self-defense instruction is not required where there is no evidence to support a finding that appellant had reasonable grounds to believe that the force he used was reasonably necessary to prevent immediate bodily harm upon himself. *State v. Columbus,* 258 N.W.2d 122, 125 (Minn.1977); *State v. Pacholl,* 361 N.W.2d 463, 465 (Minn.Ct.App.1985). The instruction is needed only if appellant sufficiently raises the defense by creating or raising a reasonable doubt that his use of force was justified. *State v. Liggons,* 348 N.W.2d 785, 790 (Minn.Ct.App.), *pet. for rev. denied,* (Minn. July 26, 1984).

A defendant claiming self-defense is hampered to some extent if he does not testify. *See, e.g., Hauwiller v. State,* 295 N.W.2d 641, 643 (Minn.1980). Nevertheless, appellant points to several pieces of evidence to support his claim.

■ None of the evidence cited by appellant is probative to identify who initiated the conflict. This is true, for example, as to proof of appellant's blood stains in the car and evidence of his severe injuries. Appellant's statement to a police dispatcher that he was beaten up is similarly neutral. Self-defense is not suggested by the fact that Williams admitted she lied. Panning's testimony that he saw Williams with a broken bottleneck in her hand while appellant was stabbing her is also insufficient to raise self-defense.

In sum, there was no evidence to contradict Williams' version of the struggle and

to support appellant's theory of self-defense. Without such evidence the trial court properly refused to submit a self-defense instruction to the jury.

■■■■■ Appellant further contends that the trial court erred by instructing the jury on the charge of attempted murder, and refusing to instruct on a lesser-included offense. This assertion is without merit because appellant failed to request such an instruction and is precluded from raising this issue on appeal. *State v. Berry*, 309 N.W.2d 777, 785 (Minn.1981); *State v. Nash*, 342 N.W.2d 177, 180 (Minn.Ct.App.), *pet. for rev. denied*, (Minn. Mar. 15, 1984).

### III.

■■ Appellant claims several instances of prosecutorial misconduct in the closing argument. In general, argument "is to be taken as a whole and no single phrase is to be taken out of context and used as a basis for reversal * * *." *State v. Gulbrandsen*, 238 Minn. 508, 509, 57 N.W.2d 419, 421 (1953). We conclude that several claims of misconduct are unfounded, and that none of the claimed instances of misconduct likely played a significant part in influencing the jury to convict. *State v. Caron*, 300 Minn. 123, 128, 218 N.W.2d 197, 200 (1974).

■■ A. The prosecutor did not comment on appellant's failure to testify. In referring to intent, the prosecutor stated:

How do you prove intent? Well, usually people tell you what they had in mind. You look at their words. What did they say? If they didn't say anything, then what? How did they behave? Sometimes actions do speak louder than words. What are their manifestations?

These comments refer to appellant's failure to talk at the time he committed the crimes, a perfectly permissible comment.

■■ B. The prosecutor's emphasis on the willingness of Williams to testify did not suggest unfairly that appellant did not testify. Rather it supported Williams' credibility to suggest that she was willing to admit unsavory facts about her past.

■■ C. The prosecutor did not improperly comment on appellant's failure to produce evidence. Defense counsel said to the jury on the opening statement that appellant told police he was robbed and attacked by a prostitute while suffering an epileptic seizure, and counsel questioned witnesses along this line. The prosecutor was entitled to anticipate possible final arguments for the defendant. *State v. Johnson*, 359 N.W.2d 698, 702 (Minn.Ct.App.1984). Further, the jury was clearly told the State had the burden of proof.

■■■ D. The fact that the prosecutor referred twice to certain "uncontroverted" evidence did not result in prejudice, although prosecutors should refrain from using this term since it may improperly suggest that a defendant has an obligation to prove facts. *See State v. DeVere*, 261 N.W.2d 604, 606 (Minn.1977).

■■■ E. The prosecutor commented that "there will be no instruction on self defense. Self defense is not part of the law of this case". · This was not prejudicial error because a distinction exists between such comments by the trial court, *Hauwiller*, 295 N.W.2d at 644, and by the prosecutor. The prosecutor's comments are only argument. The instructions stated that the jury "must follow and apply the rules of law as I give them to you."

■■■ F. The prosecutor did not unfairly attack defense counsel's integrity.

■■■ G. The prosecutor stated that Williams "told you what happened * * * she told the truth * * *." These comments referred to Williams coming into court and telling the truth about her lies and past. The comments were not so serious and prejudicial as to deny appellant a fair trial. *Johnson*, 359 N.W.2d at 702.

■■■ H. The prosecutor's comments that "in the eyes of her Creator * * * [Williams was] a human being" was not an unfair reference to God. It was an argument that Williams was entitled to protection of the law even though she was a

prostitute. The jury was also told to deliberate without prejudice, bias or sympathy.

## IV.

There is no merit in the contention of appellant that comments by State's witnesses constituted reversible error.

■ A. Witness Williams gave a non-responsive answer on direct examination:

Q. That's when you gave a statement to the police?

A. No. I gave a statement to them after I got out of the hospital completely but they came to the hospital and they had showed me some pictures and that was all. Then when I got out the hospital the real Mary Gross, she told me that they were trying to get in contact with me and that they needed my help *because that this guy was a murderer* and they needed me to help them, so I called up the homicide robbery office downtown and I talked to Don Brown and Bernie Bottema and they told me.... (Emphasis added.)

Appellant suggests this was an improper reference to suspicion that he was involved in an unrelated murder case. It is evident that this passing remark was unanticipated. It was also equally likely the jury thought it referred to the present charge. In light of this and because of the strength of evidence against appellant, it is unlikely the error resulted in substantial prejudice. *State v. Haglund,* 267 N.W.2d 503, 506 (Minn.1978); *State v. Farr,* 357 N.W.2d 163, 166 (Minn.Ct.App.1984).

■ B. St. Paul Police Sergeant Tim Erickson testified that he knew appellant. Contrary to appellant's assertions, this was not improper. On the night of the offense, St. Paul police had appellant's apartment under surveillance in connection with another investigation. Sergeant Erickson saw appellant return home in his car shortly after the attack on Williams. In laying foundation, the prosecutor elicited the fact that Sergeant Erickson knew appellant. Appellant later stipulated he returned to his apartment about 2:00 a.m. on August 21, 1982.

■ C. There was no error in eliciting from Sergeant Erickson during his redirect testimony that this was a Minneapolis case and Sergeant Erickson was a St. Paul officer and "didn't do any reports on this particular case." This testimony explained why Sergeant Erickson did not have his own notes, after defense counsel had attacked the officer's recollection by establishing that he did not prepare a written report and had refreshed his recollection by using a report from Sergeant Brown.

## V.

Appellant also contends that the prosecution improperly failed to preserve and disclose evidence.

■ A. The claim that Sergeant Brown destroyed handwritten notes after being told by the prosecutor to retain them is unsupported.

■ B. At the beginning of trial, both the prosecutor and defense counsel learned that there existed a real person known as "Mary Gross." Appellant failed to show that the State did not comply with an order requiring that it produce any available information on her. Moreover, appellant has not shown any prejudice in not having early notice about this person. *See State v. Daniels,* 332 N.W.2d 172, 179 (Minn.1983).

■ C. The State obtained blood samples from appellant by a search warrant instead of following procedures outlined in Minn.R.Crim.P. 9.02, subd. 2(5). Because the State did not introduce any evidence pertaining to the blood samples, and no prejudice has been shown, we do not further address appellant's contention on the point. *See State v. Dye,* 333 N.W.2d 642, 644 (Minn.1983).

■ D. Appellant contends St. Paul police improperly destroyed a knife found on Larpenteur Avenue in St. Paul. This did not result in any prejudice since there is no evidence the knife had any connection to this incident and destruction of the item did

not prevent appellant from introducing evidence that it was found.

## VI.

Appellant claims that the trial court erred in refusing before trial to order that his public defense counsel withdraw because of a conflict of interest. Just before trial, defense lawyers learned that another attorney from their office had previously represented Williams in unrelated prostitution cases and that one of these cases occurred while this case was pending. The lawyer interviewed Williams about this case but told her he couldn't talk to her about the matter. He apparently told her to "just go into court and tell the truth." The lawyer was not associated with appellant's defense in any way. The trial court concluded this issue was inconsequential.

 The record fails to show an actual conflict of interest that deprived appellant of his Sixth Amendment right to counsel. *Cuyler v. Sullivan*, 446 U.S. 335, 348–49, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980); *Crouse v. State*, 335 N.W.2d 236, 237 (Minn.1983). *See People v. Wilkins*, 28 N.Y.2d 53, 268 N.E.2d 756, 320 N.Y.S.2d 8, (1971).

## VII.

Appellant claims the trial court committed numerous additional errors at trial.

 A. Appellant contended at trial that the prosecutor implied defense counsel acted improperly in commenting on Williams' claim that she did not change her hitchhiking story because of a meeting with a defense investigator. The trial court did not erroneously fail to give curative instructions on the topic. There is no merit to the argument that the trial court's decision "added to the denegation of defense counsel's credibility before the jury."

 B. The trial court's response to a jury question on whether Donald Brown's report was received as evidence was not "hyper-technical." The court answered: "No." We see no merit in the argument

that this response denegated defense counsel's credibility.

 C. There is no merit to the contention that the trial court "unduly interfered with counsel's advice to appellant" by refusing to make earlier rulings on *Spreigl* evidence and on the victim's prior acts. *Spreigl* rulings often cannot be made until the State has presented its case-in-chief. *State v. Billstrom*, 276 Minn. 174, 149 N.W.2d 281 (1967).

 D. There is also no merit in appellant's claim that the trial court took inadequate measures to insure appellant's right to an impartial jury. The trial court allowed counsel to question each juror individually, granted defense counsel added peremptory challenges, permitted defense counsel to wait until the entire jury panel had been selected before exercising peremptory challenges, and repeatedly admonished jurors not to discuss the case and to refrain from exposure to the media. In addition, twice when possibly inflammatory newscasts were aired, the court conducted voir dire of the jury, and the court excused one juror who had actually been present during a newscast.

 It is unclear exactly what appellant claims the trial court failed to do. The court took appropriate precautions, short of sequestering the jury, which is discretionary. *See* Minn.R.Crim.P. 26.03, subd. 5. "Absent an overriding interest articulated in findings, the trial of a criminal case must be open to the public." *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 581, 100 S.Ct. 2814, 2829, 65 L.Ed.2d 973 (1980).

 E. The trial court decided to allow an amendment to the complaint under Minn.R.Crim.P. 17.05 to conform to the evidence, to reflect that the assault of Panning did not require physical contact. The decision was proper because the amendment did not add a different offense and because appellant was not prejudiced. *Gerdes v. State*, 319 N.W.2d 710, 712 (Minn.1982); *State v. Miller*, 352 N.W.2d 524, 525–26 (Minn.Ct.App.1984).

F. The trial court did not abuse its discretion by denying the jury's request for a copy of all of Panning's testimony and Williams' testimony relating to Panning's testimony. *State v. Daniels*, 332 N.W.2d at 177.

## VIII.

The trial court sentenced appellant to 203 months in prison, twice the presumptive sentence, for attempted second degree murder of Williams. The court also imposed a consecutive sentence of 21 months imprisonment for second degree assault of Douglas Panning.

The trial court rejected appellant's request for a downward departure:

> From an analysis of all the information provided, this Court can find no mitigating factors that the defendant was physically or mentally impaired or lacked substantial capacity for judgment when the offense was committed. I am convinced the defendant made a vicious, unprovoked attack on a slight woman.

The trial court found two aggravating factors justifying the double departure, particular cruelty to the victim, and injury to a victim by a defendant who had a prior felony conviction for an act which injured a victim.

The record supports the trial court's determination to depart upward and to impose a consecutive sentence for assault. The court noted that appellant viciously attacked Williams:

> An independent eyewitness described in agonizing detail four to five slow and deliberate stabbings with a Phillips screwdriver, forcing the weapon into the flesh and bone, lacerating the liver and collapsing a lung. The witness noted that defendant had some difficulty piercing the weapon into the flesh and, meeting with resistance, had to use some force to accomplish penetration. The resistance was such that the witness actually heard what he reported as a crunch of bones, and the victim herself described the pain and burning as the weapon was forced into her flesh. As noted by the State, defendant's choice of tool was not a knife designed to cut, but a Phillips screwdriver, which required deliberate efforts to puncture the victim's skin. Defendant did not merely stab Ms. Williams once or twice, allegedly in self defense, as he contended, but rather with savage, sadistic brutality and cruelty while astride the victim, holding her down.

The decision to depart upward was justified by Minnesota Sentencing Guidelines II.D.2.b(2); *State v. Vogelpohl*, 326 N.W.2d 635, 636 (Minn.1982); *State v. Rathbun*, 347 N.W.2d 548, 548 (Minn.Ct. App.1984).

Further, there was a prior felony conviction for an offense in which the victim was injured. *See* Minnesota Sentencing Guidelines II.D.2.b(3); *State v. Peake*, 366 N.W.2d 299, 301 (Minn.1985), *State v. Williams*, 337 N.W.2d 689, 691 (Minn.1983).

As the trial court concluded, the alleged evidence of physical and mental impairment did not outweigh aggravating factors. *See State v. Wall*, 343 N.W.2d 22 (Minn.1984). The trial court specifically found that appellant did not lack substantial capacity, and this finding is not clearly erroneous.

The consecutive sentence for assault was justified by Minnesota Sentencing Guidelines II.F.2, because it involved multiple current felony convictions against different persons. *See State v. Cermak*, 365 N.W.2d 238, 239 n. 1 (Minn.1985).

## DECISION

There was no reversible error in the conviction and sentencing of appellant for attempted murder in the second degree and assault in the second degree.

AFFIRMED.